Filed 11/24/21 In re K.S. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.S., a Person Coming Under the Juvenile Court Law. | B310420 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY S.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP02306A) |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Judge Pro Tempore. Conditionally reversed with directions.

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Father, Anthony S., appeals from an order of the juvenile court terminating his parental rights to K.S. (age 8). His sole contention is the Los Angeles County Department of Children and Family Services (DCFS) failed to adequately comply with its duties under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law (Welf. & Inst. Code,[1] § 224 et seq.). We agree, conditionally reverse, and remand with directions to comply with ICWA.

## BACKGROUND

In 2004, father and mother[2] lost parental rights to K.S.'s older twin brothers, who were adopted by paternal cousin, S.J. In the twins' proceeding, the juvenile court found ICWA did not apply.[3]

K.S. first became a dependent of the juvenile court in 2013. The court never removed her from parental custody and terminated its jurisdiction in 2016. The petition in the instant

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

[3] The juvenile court's finding ICWA did not apply to K.S.'s twin siblings has no bearing on our conclusion here. The record does not indicate what statements or inquiry, if any, was made 17 years ago, and the law has developed since then.

2

case was filed in 2018.  As sustained, DCFS alleged K.S. was a dependent of the juvenile court under section 300, subdivision (b) (failure to protect) due to her parents' domestic violence and failure to reunify with the older twins, and father's failure to protect K.S.

Initially both parents verbally reported they had no Indian ancestry.  The parents then filed ICWA-020 forms for the April 2018 detention hearing.  While mother denied having Indian heritage, father stated, "I may have Indian ancestry:  through paternal grandmother.  [¶]  Name of tribe(s):  possibly Cherokee."

At the detention hearing, the juvenile court inquired of father, who said he may have Cherokee ancestry.  The court stated it "now finds that based on the father's representation, [it has] *reason to know* [K.S.] may be an Indian child because the father identifies possible Cherokee heritage.  [¶]  [It's] ordering [DCFS] to provide notice to the Cherokee tribe to further interview the father and *any other relatives he may have* that could possibly provide further information and give notice using the ICWA 030 forms, because at this time [it has] *reason to believe* the child may be an Indian child.  Attach notices to the jurisdiction disposition report and if it receives any letters or responses, to include those as well to the report."  (Italics added.)

The minute order reflects the court ordered DCFS to provide a supplemental report of "the details of who was interviewed, dates and places of birth of the relatives as far back as can be ascertained," and then notify the Bureau of Indian Affairs (BIA), the Secretary of Interior (DOI), and the appropriate tribes.  The court detained K.S., and DCFS placed her with her twin siblings and paternal cousin S.J.

3

DCFS subsequently reported the extent of its inquiry. Father told the social worker he had been trying to investigate if he is part Cherokee. He stated he was unable to provide information about the paternal grandparents' birthdates and places or the names of any other family members.[4] Father believed a paternal great-aunt in Louisiana might know more, but he did not have her telephone number. Father said he would conduct more research and provide the social worker with the results later. The social worker then inquired of paternal cousin S.J., who said to her knowledge father did not have any Indian heritage.

In response to requests by father and mother to place K.S. with paternal aunt, S.S., who was father's in-home services provider, the juvenile court ordered DCFS to interview S.S. Also, DCFS reported for the jurisdiction hearing father had a supportive "extended family." Later in the same jurisdiction/disposition report, DCFS noted father's birthdate, that he was born in Louisiana, and the names of paternal grandparents. Father reported the paternal grandparents and the paternal aunts and uncles, are no longer alive.

DCFS sent ICWA notices to the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, the Cherokee Nation, the BIA, and the DOI in May 2018. The notices identified mother's and father's names, addresses, and former addresses; mother's birthdate; and paternal grandmother's name. All other information requested in the notice form and ordered by the juvenile court, such as father's birthdate and birthplace, and all other identifying information

---

[4] The record reflects father is intellectually impaired.

4

about paternal grandmother through whom father thought he might have Indian heritage, was listed as "UNKNOWN."

Just prior to the June 2018 jurisdiction hearing, DCFS informed the juvenile court father had provided no additional information about his possible Indian heritage. DCFS submitted two letters to the court, one from the BIA returning the ICWA notice for lack of sufficient information to determine tribal affiliation, and one from the Eastern Band of Cherokee Indians stating K.S. was neither registered nor eligible to register as a member and was not considered an Indian child in relation to that tribe. DCFS also submitted the return receipts signed by the remaining two Cherokee tribes, and the DOI.

At the combined jurisdiction and disposition hearing, the juvenile court sustained the petition, declared K.S. a dependent child, and ordered her suitably placed with family reunification services. With respect to ICWA, the court found DCFS had provided appropriate notices but needed two more ICWA responses. The court deferred its ICWA ruling until after the 60-day notice period passed. The court ordered DCFS to submit a supplemental report addressing ICWA notices.

At the end of the 60-day notice period, DCFS reported it had received no additional ICWA information from father and received no responses from the remaining two Cherokee tribes. On July 18, 2018, the court ruled it had no "reason to know" K.S. was an Indian child as defined by ICWA. All subsequent DCFS reports repeated the court's July 18, 2018 finding ICWA was inapplicable.

The juvenile court terminated parental rights pursuant to section 366.26 on February 4, 2021. Father appeals.

**DISCUSSION**

## I.  Governing Law and Standard of Review

Congress enacted ICWA to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family. (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*); *In re T.G.* (2020) 58 Cal.App.5th 275, 287 (*T.G.*).) ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a).)  "Being an 'Indian child' is thus not necessarily determined by the child's race, ancestry, or 'blood quantum,' but depends rather 'on the child's political affiliation with a federally recognized Indian Tribe.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882 (*Austin J.*).)

To determine whether ICWA applies, California law requires notice to the parent, legal guardian or Indian custodian and the Indian child's tribe if the child protective agency or court "knows or has reason to know . . . that an Indian child is involved" in the proceedings. (§ 224.3, subds. (a), (b); Cal. Rules of Court, rule 5.481(c)(1)[5].)  Notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an

---

[5] All further rule references are to the California Rules of Court.

Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 8.)

When notice is required, it must include, inter alia*,* the child's name, birthdate, and birthplace; the parents' names, birthdates and birthplaces; and the names, birthdate, and birthplaces of other direct lineal ancestors of the child, such as grandparents and great-grandparents. (§ 224.3, subd. (a)(5)(A); see 25 C.F.R. § 23.111(d)(1)-(3) (2020).)

ICWA contains a continuing, affirmative duty to inquire whether a dependent child is or may be an Indian child (§ 224.2, subd. (a); rule 5.481(a)(2)), even as late as the section 366.26 hearing (*Isaiah W.*, *supra*, 1 Cal.5th at p. 11). Interim findings of ICWA inapplicability do not put an end to that duty. (*In re A.M.* (2020) 47 Cal.App.5th 303, 321.)

The continuing, affirmative obligation to inquire about Indian status consists of three distinct duties: (1) a duty to inquire; (2) a duty of further inquiry; and (3) a duty to provide ICWA notice. (*In re D.F.* (2020) 55 Cal.App.5th 558, 566–567 (*D.F.*); see *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

The initial duty to inquire arises when a child is removed from the parents and placed in the custody of DCFS. At that point, DCFS must ask the child, parents, legal guardian, Indian custodian, *extended family members, others who have an interest in the child*, and the party reporting child abuse or neglect, about the child's Indian status. (§ 224.2, subds. (b) & (c); rule 5.481(a)(2)(A); see *D.F.*, *supra*, 55 Cal.App.5th at p. 566.)

The duty of further inquiry arises if the juvenile court, social worker, or probation officer has "reason to believe" an

7

Indian child is involved in a proceeding. (§ 224.2, subd. (e);[6] rule 5.481(a)(4); see *D.F.*, *supra*, 55 Cal.App.5th at pp. 566–567.) There is "reason to believe" a child is an Indian child "whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know [that a child is an Indian child] enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1); see rule 5.481(a)(2), (4), (b)(1)–(3).)

As relevant here, there is "reason to know" a child involved in a proceeding is an Indian child under any of the following circumstances: "A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child. [¶] . . . [¶] . . . Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child." (§ 224.2, subd. (d)(1), (3); see rule 5.481(b).)

---

[6] During K.S.'s dependency, the Legislature in emergency legislation amended section 224.2, subdivision (e), effective September 18, 2020. (Stats. 2020, ch. 104, § 15; *T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.) We apply the current version of section 224.2, because it was in effect on February 4, 2021 when parental rights were terminated. (See *Isaiah W.*, *supra*, 1 Cal.5th at p. 11.)

"Further inquiry" includes interviewing the parents and extended family members, contacting the BIA and State Department of Social Services, and contacting the tribes that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2)(A)–(C); see rule 5.481(a)(4).) "Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices . . . . Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(2)(C); see rule 5.481(a)(4).)

If there is a "reason to know" the child is an Indian child, but the court does not have sufficient evidence to make that determination, the court "shall confirm . . . in the record that [DCFS] used due diligence to identify and work with all of the tribes of which there is [a] reason to know." (§ 224.2, subd. (g).)

The duty to provide ICWA notice is triggered once the court or social worker "knows or has reason to know" an Indian child is involved in dependency proceedings. (§ 224.3, subd. (a); see rule 5.481(c)(1); *D.F.*, *supra*, 55 Cal.App.5th at p. 567.) The determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe is conclusive. (§ 224.2, subd. (h); see rule 5.481(b)(4).)

The juvenile court is required to determine whether proper notice was given and whether ICWA applies to the proceedings. (*In re E.W.* (2009) 170 Cal.App.4th 396, 403.) When the facts are undisputed as they are here, we independently determine

9

whether ICWA's requirements have been satisfied. (*D.S., supra,* 46 Cal.App.5th at p. 1051.)

## II. DCFS Failed to Conduct an Adequate Inquiry into K.S.'s Possible Indian Ancestry and Failed to Provide Proper Notice

Father contends the juvenile court and DCFS failed to comply with ICWA by failing to adequately inquire of father and paternal relatives about possible Indian heritage. Father also attacks the notices sent to the tribes. We agree DCFS failed to comply with its duties under ICWA.

DCFS partially complied with its initial duty to inquire when K.S. was removed from parental custody by inquiring of K.S.'s parents. In response, father stated he believed he may have Cherokee ancestry through paternal grandmother. At this stage, DCFS was obligated to ask extended family members about K.S.'s possible Indian status. (See § 224.2, subd. (b).) The court recognized this duty at the detention hearing when it ordered DCFS to interview "any other relatives [father] may have." Based on what it already knew, the court found it had "reason to know" and "reason to believe" K.S. may be an Indian child. (See § 224.2, subds. (d)(3) & (e)(1).) We interpret the court's findings as triggering the duty of further inquiry under section 224.2, subdivision (e).

DCFS failed to comply with its duty of further inquiry. DCFS did not adequately interview all *known* extended family members. ICWA defines cousins as extended family members. (25 U.S.C. § 1903(2).) Although paternal cousin S.J. disclaimed Indian ancestry, DCFS did not indicate whether S.J. was related to father through paternal grandmother or whether S.J. had further information about extended family members. Moreover,

10

even though DCFS interviewed paternal aunt S.S. about placement and visitation monitoring, there is no indication the social worker asked S.S. about Indian ancestry. Crucially, DCFS could have inquired of the paternal cousins about how to reach great aunt in Louisiana and to contact her directly, as father indicated she could have meaningful information. Nor did DCFS make any attempt to gather from these extended family members information father was unable to give, such as birthplaces and birthdates for paternal grandmother and paternal great grandparents.

We recognize not all the information mandated by section 224.2 will be obtainable. However, we cannot say DCFS adequately satisfied its inquiry duty in the absence of documentation showing it pursued the leads it had in hand. (See *T.G.*, *supra*, 58 Cal.App.5th at p. 289 ["just as proper notice to Indian tribes is central to effectuating ICWA's purpose, an adequate investigation of a family member's belief a child may have Indian ancestry is essential"]; see also *In re M.W.* (2020) 49 Cal.App.5th 1034, 1044 [even where father unable to identify tribe, his statement he may have Indian ancestry triggered duty of further inquiry under § 224.2, subd. (e)]; *D.S.*, *supra*, 46 Cal.App.5th at p. 1052 [aunt's statement of possible Indian ancestry established reason to believe and triggered a duty to conduct further inquiry].)

The juvenile court's finding it had "reason to know" an Indian child may be involved also triggered the duty to provide ICWA notice. Again, we conclude DCFS partially complied with this duty. However, the notices were incomplete and deficient, because DCFS failed to share all the information in its

11

possession.  Notices are strictly construed.  (*In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1216.)

Here, the notices omitted *known* information, such as father's birthplace and birthdate, and the names of paternal grandparents, all of which was documented in the same report containing the mailed notices.  (See 25 C.F.R. § 23.111(d)(1)-(3) (2020).)  The social worker failed to call, fax, or email the tribes to share information about paternal cousins.  (See § 224.2, subd. (e)(2)(C).)  In short, as DCFS implicitly acknowledges, the agency never reached the point that no additional information existed to give the court a reason to believe K.S. was an Indian child.  (See § 224.2, subd. (i)(1) [where reason to know child is Indian child, court shall treat child as Indian child unless and until court determines on the record and after review of report of due diligence that child does not meet definition of Indian child].)

True, DCFS is not required to " 'cast about' for information or pursue unproductive investigative leads."  (*D.S.*, *supra*, 46 Cal.App.5th at p. 1053.)  However, it was obligated at a minimum to make a meaningful effort to interview known extended family members to obtain whatever information they may have about the child's possible Indian status.  (*In re K.R.* (2018) 20 Cal.App.5th 701, 707.)  The duty is discharged if DCFS or the court has done all it can do to follow up on leads.  (See *In re K.M.* (2009) 172 Cal.App.4th 115, 119; see also § 224.2, subd. (g) [court shall confirm DCFS has used due diligence].)

DCFS urges us to follow *In re Austin J.*, *supra*, 47 Cal.App.5th 870.  DCFS argues the statements father made were "insufficient by themselves to provide a reason to believe" such as would trigger further inquiry.  We are not persuaded.  Unlike in *Austin J.*, where DCFS followed up with mother and

12

her aunt (*id*. at p. 888), here the social worker failed to inquire of paternal aunt S.S., or to attempt to locate paternal great-aunt in Louisiana.

Moreover, since *Austin J.* was decided, the Legislature amended section 224.2, subdivision (e)(1) to explain the juvenile court has "reason to believe" a child is an Indian child when it or DCFS "has information suggesting" one of the parents or child "may be eligible for membership in an Indian tribe."  (See § 224.2, subds. (d)(3) & (e)(1); see also *T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14 [noting courts observed the Legislature did not define phrase " 'reason to believe' " in 2020 version of statute effective Sept. 18, 2020].)

DCFS argues cases criticizing *Austin J.*, including *T.G.* and *In re S.R.* (2021) 64 Cal.App.5th 303, ignored the fact when it amended California's ICWA statutes the Legislature removed the language "information suggesting the child is a member of a tribe or eligible for membership in a tribe" from the list of circumstances that provided one with a "reason to know" a child is an Indian child, while simultaneously declining to add that language to the newly created "reason to believe" standard for further inquiry.  DCFS is wrong in its premise.  While the short-lived version of section 224.2 effective January 1, 2020 to September 17, 2020 (former § 224.2, amended by Stats. 2019, ch. 434, § 2) eliminated the referenced phrase, the current version effective September 18, 2020, as quoted above, reintroduced similar language.  (See § 224.2, subd. (e)(1).)  We apply the current version of section 224.2 to this case.  (*Isaiah W.*, *supra*, 1 Cal.5th at p. 11.)[7]

---

[7] See footnote 6, *ante*, page 8.

13

It is unfortunate after three years of dependency K.S.'s permanency must be delayed to ensure adequate compliance with ICWA.  However, the decision whether K.S. is an Indian child is made by the tribe, not by the juvenile court or by DCFS. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 15.)  DCFS must be more diligent in complying with ICWA.  Childhood is short, permanency is the goal, and finality is essential.

## DISPOSITION

The order terminating parental rights is conditionally reversed and remanded to the juvenile court to direct DCFS to comply with the inquiry and notice provisions of ICWA and related California law.  Should the juvenile court conclude ICWA does not apply and the child is not an Indian child, it shall reinstate the order terminating parental rights.  If a tribe indicates K.S. is an Indian child, the juvenile court shall conduct further proceedings in compliance with ICWA.  In all other respects, the order terminating parental rights is affirmed.

NOT TO BE PUBLISHED.

KNILL, J.[*]

We concur:

EDMON, P. J.          EGERTON, J.

---

[*] Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14