Filed 7/5/22 In re B.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| In re B.L., a Person Coming Under the Juvenile Court Law. | C094980 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JV-DP-2019-0000419) |
| Plaintiff and Respondent, | |
| v. | |
| C.M., | |
| Defendant and Appellant. | |

C.M., mother of the minor, appeals from the juvenile court's order terminating her parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)[1] Mother contends the court and the San Joaquin County Human Services Agency

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

(Agency) failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA). Finding any error was harmless, we will affirm the juvenile court's judgment.

## BACKGROUND

Because mother's sole claim challenges compliance with the ICWA, we limit the background summary to ICWA related facts and procedure unless otherwise relevant to the issue on appeal.

The minor was removed from mother's sole custody after the Agency filed a dependency petition pursuant to section 300, subdivisions (b)(1), (g) and (j). Mother informed the Agency that T.B. was the minor's father because he was with mother when the minor was born and he signed the minor's birth certificate. However, mother later reported that T.B. was not the minor's biological father. Instead, the biological father was a man named Jonathan, with whom she had had a "brief encounter" when she lived in Mexico. Mother did not know Jonathan's last name, but she stated he lived in Mexico and had never been in the minor's life. The juvenile court ordered the minor detained and declared T.B. to be the minor's biological father.

Mother informed the Agency that there was no known Indian ancestry on her side of the family. She completed an ICWA-010A form to that effect. The maternal grandmother and the maternal aunt each completed ICWA-020 forms indicating they had no known Indian ancestry. Mother did not say whether T.B. had Indian heritage on his side of the family. The Agency's initial attempts to contact T.B. were unsuccessful. Mother had significant child welfare history, including the eventual adoption of her two older children due to mother's failure to complete services, and the removal of her two younger children who were in the custody of their father, T.B.

The court sustained the allegations in the petition, as amended in court, and adjudged the minor a dependent of the juvenile court.

The January 2020 disposition report stated there was no reason to believe the minor was an Indian child within the meaning of the ICWA, noting mother, the maternal aunt, and the maternal grandmother all indicated they had no known Indian ancestry. The report also stated that after mother had her encounter with Jonathan in Mexico, she returned to California, where she met T.B. and moved in with him right away. When she gave birth to the minor, T.B. took on the role of father in the minor's life. Mother had two more children with T.B., but she eventually separated from him due to ongoing domestic violence between them. T.B. had not come forward to express interest in placement of the minor, nor had he appeared at any of the court proceedings, despite having been provided adequate notice.

The July 2020 status review report confirmed that mother had named Jonathan as the minor's biological father and stated he resided in Mexico; however, Jonathan's whereabouts were unknown to the Agency. The report reiterated the Agency's previous statement that there was no reason to believe the minor was an Indian child within the meaning of the ICWA. The November 2020 and April 2021 status review reports repeated the same ICWA information previously provided.

T.B. made his first court appearance at the November 19, 2020 dependent review hearing. The court asked T.B. whether he had any Indian heritage, and T.B. responded, "No."

The court terminated mother's reunification services and set the matter for a section 366.26 hearing. The Agency's section 366.26 report and its subsequent status review report reiterated its previous statement that the ICWA did not apply and recommended that the court terminate parental rights and free the minor for adoption. At the section 366.26 hearing, after hearing mother's testimony, the court terminated parental rights.

DISCUSSION

Mother contends the Agency and the juvenile court failed to satisfy their inquiry obligations under the ICWA, and she asks that we remand the matter for additional ICWA proceedings. We decline to do so.

The juvenile court and the Agency have "an affirmative and continuing duty to inquire" whether a child is, or may be, an Indian child. (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a); see *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subd. (a); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to believe' the child is an Indian child, then the Agency 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e) . . . .) Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S., supra*, 46 Cal.App.5th at p. 1052, italics omitted.)

Once a court or social worker has a reason to believe a child is an Indian child, section 224.2, subdivision (e) explains the "further inquiry regarding the possible Indian status of the child" includes, but is not limited to: (1) "[i]nterviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3"; (2) "[c]ontacting the Bureau of Indian Affairs [(BIA)] and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or

4

eligible for membership in"; and (3) "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)-(C).)

"The juvenile court may alternatively make a finding that [the] ICWA does not apply because the Agency's further inquiry and due diligence was 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered. (§ 224.2, subds. (i)(2), (g).) Even if the court makes this finding, the Agency and the court have a continuing duty under [the] ICWA, and the court 'shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry.' (§ 224.2, subd. (i)(2).)" (*D.S., supra*, 46 Cal.App.5th at p. 1050, italics omitted.)

We apply a substantial evidence review to the juvenile court's ICWA findings. (*D.S., supra*, 46 Cal.App.5th at p. 1051.) "Deficiencies in [the] ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child. [Citations.]" (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.)

Mother, the maternal aunt, and the maternal grandmother all indicated they had no known Indian ancestry. As for the minor's biological father, mother informed the Agency that she had a brief encounter with a man named Jonathan, whose last name she did not know, when she was residing in Mexico. Mother left Mexico five months later, prior to the minor's birth. Mother claims the Agency failed to search for Jonathan and failed to inquire of Jonathan's extended family regarding possible Indian heritage despite that mother identified him as the minor's biological father. However, mother never provided the Agency with Jonathan's last name and the only other information told to the Agency was that he lived in Mexico when mother became pregnant with the minor. Similarly, there was no information provided to, known to, or available to the Agency regarding the identification or location of Jonathan's relatives. Despite mother's claim

5

that the Agency failed to do its due diligence in searching for Jonathan and his relatives, the Agency was not required to " 'cast about' for information or pursue unproductive investigative leads." (*D.S., supra*, 46 Cal.App.5th at p. 1053.) "There is no need for further inquiry if no one has offered information that would give the court or [the Agency] reason to believe that a child might be an Indian child." (*In re A.M.* (2020) 47 Cal.App.5th 303, 323.) "This includes circumstances where parents 'fail[ ] to provide any information requiring followup' [citations] . . . ." (*Ibid.*) The information mother provided was insufficient to require further inquiry. As a consequence, the Agency had no investigative leads regarding Jonathan other than the fact that he, at one point, lived in Mexico, and mother has not identified any such lead in her appeal. There was no reason to believe the minor was an Indian child vis-à-vis Jonathan. Therefore, the Agency had complied with its ICWA duties with respect to Jonathan.

Mother concedes T.B. was not the minor's biological father but argues T.B. was the minor's "legal father" and the Agency therefore failed its duty to inquire of T.B.'s extended family regarding possible Indian ancestry. The ICWA defines a " 'parent' " as "any biological parent or parents of an Indian child or any Indian person who has lawfully adopted an Indian child . . . . It does not include the unwed father where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9); § 224.1, subd. (c).) Our review of the record reveals nothing to demonstrate either that mother and T.B. were married or that T.B. legally adopted the minor. Despite the court's initial finding that T.B. was the biological father, mother concedes and the record makes plain, that T.B. was neither the biological father of the minor nor had his paternity been acknowledged or established. As previously noted, an "Indian child" for purposes of the ICWA is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe " 'and is the *biological child* of a member of an Indian tribe . . . .' (25 U.S.C. § 1903(4); accord, [ ] § 224.1, subd. (a)[ ].)" (*D.S., supra*, 46 Cal.App.5th at

p. 1048, italics added.) With respect to T.B., the minor was neither. Thus, there was no reason to inquire of T.B.'s extended family.

Finally, mother claims the court failed to make any ICWA finding before proceeding with the section 366.26 hearing and terminating parental rights. "If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court *may* make a finding that the [ICWA] (25 U.S.C. Sec. 1901 et seq.) does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2), italics added.) Several appellate courts, including this one, have held that the juvenile court is not required to make an express finding that the ICWA does not apply. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199, superseded by statute on other grounds as stated in *In re B.E.* (2020) 46 Cal.App.5th 932, 940.) It is only necessary that the record reflect that the court considered and determined the issue. The ICWA finding may be express or implied. (*In re Asia L., supra*, at p. 506; *In re Levi U., supra*, at p. 199.)

Our colleagues in the Fourth District Court of Appeal disagreed, suggesting instead that "juvenile courts should make an explicit rather than implicit determination as to the applicability of the ICWA" (*In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413, citing *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 705), and affirming that "juvenile courts should abide by their obligation to determine in the first instance whether the ICWA applies." (*In re Antoinette S., supra*, at p. 1413.) However, the *In re Antoinette S.* court found that where the juvenile court made neither an explicit nor an implicit ICWA finding, the error was nevertheless harmless where there was clear evidence in the BIA's responses to the ICWA notices that the ICWA did not apply. (*In re Antoinette S.*, at pp. 1413-1414.)

Our review of the record here reveals that while the juvenile court inquired of T.B. whether he had any known Indian ancestry, the court apparently did not otherwise refer

7

to the ICWA or make an express ICWA related finding at any point throughout the dependency proceedings. What the court did do, however, was confirm it read and considered the Agency's section 366.26 report, which included information that no one on the maternal side of the family had any known Indian heritage. Given the dearth of information available regarding the minor's biological father, Jonathan, making it nearly impossible to identify or locate him or his extended family, the report demonstrated that the only conclusion to be drawn was that there was no reason to believe the minor was an Indian child and that the ICWA did not apply. Therefore, any error in omitting an express ICWA finding was harmless.

## DISPOSITION

The juvenile court's order is affirmed.


      KRAUSE      , J.


We concur:


      HULL      , Acting P. J.


      MAURO      , J.