Filed 7/26/22  In re H.S. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re H.S., a Person Coming Under the Juvenile Court Law. | B314792 (Los Angeles County Super. Ct. No. 19CCJP05225) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. MARY P. et al., Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Commissioner.  Affirmed.

The Law Office of Richard L. Knight and Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant Mary P.

Susanne M. Nicholson, under appointment by the Court of Appeal, for Defendant and Appellant R.S.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Mother (Mary P.) and father (R.S.) appeal from the juvenile court's order terminating parental rights over their child, H.S. (born Dec. 2017) under Welfare and Institutions Code section 366.26.[1]  Both parents contend that the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry requirements under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 14, 2019, DCFS filed a dependency petition on behalf of H.S. under section 300, subdivision (b)(1).  A first amended petition was then filed on December 3, 2019, and on February 5, 2020, the petition was sustained as amended by interlineation.[3]

Attached to the original petition was the ICWA-010 form, wherein DCFS noted that H.S. may have Indian ancestry based on mother's

---

[1]    All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]    Our summary of the facts is limited to those needed for resolution of the ICWA issues raised on appeal and to provide relevant context.

[3]    The juvenile court found R.S. to be H.S.'s presumed father.

2

statement that maternal great grandfather (Walter P.) was in the Cherokee tribe.

On August 15, 2019, mother and R.S. each filed a parental notification of Indian status (ICWA-020 form). Mother stated she may have Indian ancestry (Cherokee). R.S. stated he had no Indian ancestry as far as he knew.

At the detention hearing on the original petition, the juvenile court was informed there may be some Cherokee heritage in mother's background. When asked by the court if mother wanted to provide additional information, she replied, "No." The court deferred the ICWA finding and ordered DCFS to investigate mother's claim of Indian ancestry. The court confirmed with father that he indicated ICWA did not apply, and he had no Indian ancestry. The court found it did not have reason to know that ICWA applied as to father.

On multiple occasions, the dependency investigator attempted to contact mother to set up an interview to inquire about her Cherokee heritage. Mother did not return any of her messages.

On September 17, 2019, the dependency investigator was able to contact maternal grandmother, Amber P. (hereafter, MGM). MGM informed the social worker that there were reports of Cherokee heritage through maternal great grandfather, Walter Eugene P. (born on Sept. 12, 1952 in Minnesota). Walter P. was also half-German descent. She reported that maternal great grandmother was Mary Lou P. (born Apr. 22, 1952 in Minnesota). However, she stated she had no information as to maternal great-great grandparents. Also, no one in her family confirmed the claim of Cherokee ancestry with the government or enrolled in any tribe.

That same day, the dependency investigator sent out ICWA notices (ICWA-030) to the Bureau of Indian Affairs (BIA), Secretary of the Interior, Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee Indians of Oklahoma. The notices listed the name, current state residence, and date and place of birth of maternal grandmother (Amber P.); the name, current state residence, and date of birth of maternal grandfather (Kevin Allen H.); the name, date and place of birth of maternal great grandmother (Mary Lou P.); and the name, date and place of birth of maternal great grandfather (Walter Eugene P.).

On October 7, 2019, DCFS received a response from the Eastern Band of Cherokee Indians regarding H.S.'s ICWA eligibility. The tribe stated that H.S. "is neither registered nor eligible to register as a member of this tribe," and therefore the tribe would not intervene in the case.

On November 6, 2019, the dependency investigator interviewed father. Father stated H.S. "is not an Indian child." During this conversation, father provided paternal grandmother's and grandfather's names, address, and phone number. Father had previously taken a DNA test to establish paternity, which indicated his race was "Asian Indian." H.S.'s birth certificate stated that father was born in Malaysia.

On November 13, 2019, the juvenile court found it had no reason to know that the ICWA applied in this case and, if any other information was available as to ICWA, that it should be included in a report.

On December 10, 2019, the dependency investigator sent out a second set of ICWA notices (ICWA-030) to the BIA, Secretary of the Interior, Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee Indians of Oklahoma. The notices listed the name, date and place of birth of maternal grandmother (Amber P.); the name, current

4

address, date and place of birth of maternal grandfather (Thomas Allen F.); the name, date and place of birth of maternal great grandmother and maternal great-great grandmother (Mary Lou P.B. and Mary A., respectively); the name, date and place of birth of maternal great grandfather (Walter P.); and the name of maternal great-great grandfather (Russell B.).[4]

On December 17, 2019, the dependency investigator spoke to paternal grandmother over the phone. Paternal grandmother (Kamal K.) stated that she and paternal aunt (Mina K.) were unable to take care of H.S. Paternal grandmother was unwilling to provide paternal aunt's contact information but would allow the investigator to send a letter addressed to paternal aunt to paternal grandmother's home.

On December 31, 2019, DCFS received a response from the Cherokee Nation, stating that H.S. is not an Indian child in relation to the tribe, and therefore the tribe did not have legal standing to intervene in the case.

On January 31, 2020, the dependency investigator contacted MGM and requested family member's names and contact information to follow-up regarding Indian heritage. MGM declined and stated that she had spoken to her family, and the family agreed MGM had provided DCFS with all of the relevant information. Specifically, maternal uncle and maternal great grandmother had "nothing else to add." When the social worker asked for maternal great grandmother's contact information, MGM declined and stated she would pass along the social worker's contact information to maternal great grandmother herself.

---

[4] The date of birth listed for Mary Lou P.B. and Walter P. were switched from the prior notice.

At the February 5, 2020 adjudication hearing, DCFS requested that the juvenile court make a finding as to ICWA. The court found that ICWA notice was proper, and all of the attempts made to notice the Cherokee tribes that were included in DCFS reports and the information DCFS received led to the conclusion that ICWA did not apply as to mother. The court also found ICWA did not apply as to father.

On November 18, 2020, the juvenile court terminated reunification services and set a permanency planning hearing. On August 19, 2021, the court terminated parental rights and designated H.S.'s current caretakers as the prospective adoptive parents. Mother and father timely filed a notice of appeal.

## DISCUSSION

Both parents contend DCFS failed to comply with their duties of inquiry under ICWA and related state law. Each parent identifies a different failure.[5] Father contends DCFS failed to fulfill its duty of initial inquiry under section 224.2, subdivision (b), because it did not ask his extended family members whether H.S. may have Indian heritage. Mother contends DCFS failed to fulfill its duty of further inquiry under section 224.2, subdivision (e), after she provided them reason to believe H.S. was an Indian child. DCFS concedes error as to father, but contends it was harmless. We agree the error was harmless. We also conclude that DCFS did meet its duty of further inquiry into mother's Indian ancestry.

---

[5] Each parent also joins the arguments contained in the other's briefs to the extent they are beneficial. (Cal. Rules of Court, rule 8.200(a)(5).)

6

A. *Applicable Law and Standard of Review*

ICWA[6] reflects "a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court … must follow before removing an Indian child from his or her family." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 881 (*Austin J.*).)  Both ICWA and the Welfare and Institutions Code define an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a) and (b) [incorporating federal definitions].)

The juvenile court and DCFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12.)  This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice. The phases at issue here are the initial duty to inquire and the duty of further inquiry.

The duty to inquire whether a child is an Indian child begins with "the initial contact," i.e., when the referring party reports child abuse or neglect that jumpstarts DCFS investigation.  (§ 224.2, subd. (a).)  DCFS's initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child.  (*Id.* subd. (b).)  Similarly, the juvenile court must inquire at each parent's first appearance whether he or she "knows or has

---

[6]     Our state Legislature incorporated ICWA's requirements into California statutory law in 2006.  (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.)

7

reason to know that the child is an Indian child." (*Id*. subd. (c).) The juvenile court must also require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).) The parties are instructed to inform the court "if they subsequently receive information that provides reason to know the child is an Indian child." (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)

A duty of further inquiry is imposed when DCFS or the juvenile court has "reason to believe that an Indian child is involved" in the proceedings. (§ 224.2, subd. (e); *Austin J., supra*, 47 Cal.App.5th at pp. 883–884, and *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048–1049 (*D.S.*).) The Legislature did not define what constitutes "reason to believe." (See *ibid*.)

Further inquiry as to the possible Indian status of the child includes: (1) interviewing the parents and extended family members to gather required information;[7] (2) contacting the BIA and State Department of Social Services for assistance in identifying the tribes in which the child may be a member or eligible for membership in; and (3) contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership or eligibility. (§§ 224.2, subds. (e)(1)–(2) & 224.3, subds. (a)(5)(A)–(C); Cal. Rules of Court, rule 5.481(a)(4) [sets forth same requirements].) Contact with a tribe must include, at a minimum, "telephone, facsimile, or electronic mail contact to each tribe's designated agent" and include information "necessary for the tribe to make a

---

[7] This required information includes: All known names of the Indian child, biological parents, grandparents, and great-grandparents, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information. (§ 224.3, subd. (a)(5).)

membership or eligibility determination." (§ 224.2, subd. (e)(1)(C).) The sharing of information with tribes at the further inquiry stage is distinct from formal ICWA notice, which requires a "reason to know," rather than a "reason to believe," that the child is an Indian child. (*D.S., supra,* 46 Cal.App.5th at p. 1052.)

We review a juvenile court's ICWA findings for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401; *In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

B. *Analysis*

1. *Initial Inquiry into Father's Possible Indian Ancestry*

Father argues DCFS failed its initial inquiry under section 224.2, subdivision (b),[8] because the dependency investigator did not make any effort to contact his extended family members about Indian ancestry. DCFS concedes error, but argues any error was harmless. We agree.

"At this point in time, the California courts have staked out three different rules for assessing whether a defective initial inquiry is harmless." (*In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*).) We believe a fourth rule recently adopted by our colleagues in *Dezi C.* is the better approach. In *Dezi C.,* the court stated that "an agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child

---

[8] Under section 224.2, subdivision (b), "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*Id.* at p. *4.)

Here, the record does not provide a "reason to believe" that H.S. is an Indian child. Rather, father repeatedly denied any Indian ancestry to DCFS (orally and on the ICWA-020 form) and to the juvenile court during his initial appearance. Moreover, H.S.'s birth certificate stated that father was born in Malaysia, and father's DNA test (taken to establish paternity) demonstrated his genetic background was Asian and East Indian. In short, nothing in the record suggests any reason to believe that father's knowledge of his heritage is incorrect or that H.S. might have Indian ancestry. Therefore, we conclude that DCFS's error in this case was harmless.

2. *Further Inquiry in Mother's Possible Indian Ancestry*

Mother contends DCFS failed its further inquiry duties under section 224.2, subdivision (e), because the dependency investigator did not interview all available extended family members about Indian ancestry, and DCFS failed to provide full and complete documentation of its investigation.

Mother's contention that DCFS should have reached out to all available maternal relatives is unavailing. DCFS "must inquire as to possible Indian ancestry and act on any information it receives, but it has no duty to conduct an extensive independent investigation for information." (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41; *In re Antoinette S.* (2002) 104 Cal.App.4th 1401, 1413 ["the obligation is only one of inquiry and not an absolute duty to ascertain or refute [Indian] ancestry"]; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199, superseded by statute on other grounds as stated in *In re B.E.* (2020) 46

10

Cal.App.5th 932, 940 [DCFS is not required to conduct an extensive independent investigation or to "cast about" for investigative leads].)

Here, DCFS could not have obtained any further information from any of mother's relatives. Mother had ignored the dependency investigator's multiple attempts to contact her about Indian ancestry. The investigator then interviewed MGM, who provided information on possible relatives who were believed to have Indian heritage. MGM stated that no maternal family member confirmed the claim of Cherokee ancestry with any government entity or was an enrolled member in any tribe.

After sending out the first set of ICWA notices, the dependency investigator again contacted MGM to request family members' names and contact information to follow up on Indian ancestry. MGM refused to provide such information and stated she had spoken with her family who said MGM provided all the information that they would have provided to her. MGM had specifically asked her brother (maternal uncle) and her mother (maternal great grandmother), and they had "nothing else to add." When asked for maternal great grandmother's contact information, MGM responded that she would call her to ask if she wanted to talk to the dependency investigator. MGM would only provide great grandmother the investigator's contact information. No further inquiry, thus, was possible or required. (E.g., *In re K.M.* (2009) 172 Cal.App.4th 115, 119 [where DCFS "attempted on several occasions to elicit further information from the child's family, but was unsuccessful due to the family's hostility" toward the agency, the agency "did all that can or should be reasonably expected of it to meet its obligation to the child, to the family, to the tribes and to the court"].)

Mother further contends that DCFS failed to provide full and complete documentation of its investigation. That is not the case. DCFS documented

11

all of its inquiries with mother and MGM, as well as its attempts to contact additional extended family members—an argument we have previously rejected.

In challenging DCFS's alleged lack of clarity in reporting, mother asserts that its identification of MGM created confusion because the investigator referred to both Amber H. and Amber P. as MGM in the DCFS reports, with the latter only on the ICWA notices. However, MGM had explained to the investigator that although she was married to Kevin Allen H., he was not mother's biological father. Therefore, MGM's maiden name is listed in the ICWA notices as Amber P. Contrary to mother's contention, it is clear from the record that Amber P. and Amber H. are not two different people.

We conclude DCFS's repeated efforts to gather information concerning H.S.'s maternal ancestry constitutes substantial evidence that DCFS met its duty of further inquiry.[9]

---

[9] To the extent the parents challenge the adequacy of the notices DCFS mailed to the tribes, it is irrelevant. ICWA notice is required only if after initial and further inquiries there is "reason to know" that an Indian child is involved in the proceeding. (§ 224.2, subd. (f).) There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child is a member or eligible for membership in an Indian tribe, the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (*Id*. subd. (d).) Here, none of these statutory criteria was met, and thus ICWA notice was not required. (*In re Q.M.* (2022) 79 Cal.App.5th 1068.)

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

MANELLA, P. J.

CURREY, J.