172 Cal.App.4th 115 (2009)
In re K.M., A Person Coming Under the Juvenile Court Law.
VENTURA COUNTY HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
C.M., Defendant and Appellant.
No. B206435.
Court of Appeals of California, Second District, Division Six.
March 16, 2009.
As modified March 26, 2009.
*117 Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.
Noel A. Klebaum, County Counsel, and Linda L. Stevenson, Assistant County Counsel, for Plaintiff and Respondent.

OPINION
PERREN, J. 
C.M. appeals an order of the juvenile court terminating parental rights and finding her child adoptable. (Welf. & Inst. Code, § 366.26.) She contends the juvenile court erred in giving the notices required by the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We affirm.

FACTS AND PROCEDURAL HISTORY
Respondent Ventura County Human Services Agency (Agency) filed a juvenile dependency petition on behalf of two-year-old K.M. on November 14, 2006. The petition alleged the mother, C.M., did not properly supervise or care for the child. C.M. had untreated mental and emotional problems and was incarcerated for child endangerment. The child's father is unknown.
C.M. indicated on an Indian ancestry questionnaire that she was, or might be, a member of the "Cherakia" tribe. Based on this information, the Agency gave notice of the December 7, 2006, jurisdiction and disposition hearing to the Bureau of Indian Affairs (BIA), the Eastern Band of Cherokee Indians, the Cherokee Nation and the United Keetoowah Band of Cherokee Indians. The notices contained only the names and addresses of C.M. and presumed father. The Eastern Band and United Keetoowah Band sent replies that K.M. was not a member of that tribe.
In a memorandum dated December 3, 2007, the social worker explained that she had asked C.M. several times for further information regarding her *118 Indian ancestry, and C.M. referred the social worker to her mother. On October 21, 2007, the social worker asked the maternal grandmother about the family's Indian ancestry. She told the social worker that she had Choctaw ancestry and her ex-husband had Cherokee ancestry. She provided the social worker with their birth dates. She also provided the names of the child's great-grandparents and indicated they had Indian ancestry. The maternal grandmother was unwilling to provide further information regarding the child's possible Indian ancestry because she believed the Agency was not properly managing the child's case. According to the social worker, grandmother said, "I'll give you the information when my baby is back with me. I'm not going to give you anything so that those foster parents . . . can get any money for my baby."
The social worker spoke with C.M. once again on December 7, 2007, about the child's possible Indian heritage. At that time, C.M. provided the name of her paternal grandmother, but could not provide an address or telephone number for her or any other relevant information. C.M. also identified her maternal great-grandmother and maternal grandfather but could provide no further information about them.
After being informed that the grandmother and grandfather had Cherokee and Choctaw heritage, the Agency sent additional notices to the Cherokee tribes and BIA, and to the Jena Band of Choctaw Indians, the Choctaw Nation of Oklahoma and the Mississippi Band of Choctaw Indians. The notices included the names of the child's maternal grandmother and grandfather and maternal great-grandmother and great-grandfather. None of the tribes indicated that K.M. was a member of a tribe. At the hearing terminating parental rights on February 28, 2008, the trial court found that K.M. was not an Indian child.

DISCUSSION
C.M. contends that termination of her parental rights must be reversed because the Agency did not interview the child's great-grandmother regarding possible Indian ancestry.
(1) ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) For purposes of ICWA, an "Indian child" is one who is either a "member of an Indian tribe" or is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and social services agencies have an affirmative duty to inquire at the outset of the proceedings *119 whether a child who is subject to the proceedings is, or may be, an Indian child. (In re Desiree F. (2000) 83 Cal.App.4th 460, 469-470 [99 Cal.Rptr.2d 688].)
(2) The object of tribal notice is to enable a review of tribal records to ascertain a child's status under ICWA. (In re D. T. (2003) 113 Cal.App.4th 1449, 1455 [5 Cal.Rptr.3d 893].) The notices "must contain enough information to be meaningful. [Citation.] The notice must include: if known, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition." (In re Francisco W. (2006) 139 Cal.App.4th 695, 703 [43 Cal.Rptr.3d 171].) "It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage. [Citation.] Notice . . . must include available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data." (Ibid.; see In re C.D. (2003) 110 Cal.App.4th 214, 224-225 [1 Cal.Rptr.3d 578].)
The Agency gave notice to the tribes identified by K.M.'s grandmother and provided the names of K.M.'s grandfather and grandmother and great-grandmother and great-grandfather and all other information the Agency was able to obtain from C.M. and grandmother. The record shows the Agency attempted on several occasions to elicit further information from the child's family, but was unsuccessful due to the family's hostility toward the Agency. In sum, the Agency did all that can or should be reasonably expected of it to meet its obligation to the child, to the family, to the tribes and to the court.
(3) We have not been cited to and we have not found any case that requires the Agency to make further inquiry in these circumstances. Based on the information provided by the child's maternal grandmother, the Agency notified several Cherokee and Choctaw tribes. Implicit in appellant's argument is that the maternal great-grandmother might have provided information about possible heritage in some other Indian tribe. However, the Agency's request for information needed to contact the great-grandmother was refused. ICWA does not require further inquiry based on mere supposition. (See, e.g., In re Levi U. (2000) 78 Cal.App.4th 191, 199 [92 Cal.Rptr.2d 648] [the agency is not required to conduct an extensive independent investigation or to "cast about, attempting to learn the names of possible tribal units to which to send notices"].) The Agency was not required to make further inquiries.
*120 Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship without any showing whatsoever that the interests protected by ICWA are implicated in any way.
The order is affirmed.
Gilbert, P. J., and Yegan, J., concurred.