Filed 11/8/21  In re R.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re R.M., Person Coming Under Juvenile Court Law. | B311063 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP02882A) |
| Plaintiff and Respondent, | |
| v. | |
| C.G., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael Abzug, Judge.  Affirmed.

Annie Greenleaf, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Mother appeals from the juvenile court's termination of her parental rights to her son, R.M. She argues the court and the Department of Children and Family Services (DCFS) failed to satisfy their duty of further inquiry into R.M.'s maternal lineage under the Indian Child Welfare Act (ICWA). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Prior Dependency History

R.M. is mother's fifth child. Mother lost custody of her first four children due to drug abuse. Most recently, mother's fourth child, M.G. was the subject of dependency proceedings in San Bernardino County juvenile court (case No. 0000272967.)[1] In that case, mother claimed Blackfeet, Choctaw, Cherokee, Chickasaw, and Chippewa ancestry. On March 12, 2019, after DCFS noticed those tribes, the San Bernardino court made a finding that ICWA did not apply. The actual ICWA notices filed in San Bernardino were not made part of the record in the present dependency proceedings. On July 28, 2019, the San Bernardino court terminated mother's parental rights to M.G., and he was freed for adoption.

### 2. Juvenile Court Proceedings as to R.M.

In May 2019, a few days after his birth, DCFS detained R.M. On May 9, 2019, mother appeared with counsel at the detention hearing and claimed she had Native American ancestry, specifically Chippewa and Choctaw heritage from her father's side of the family. On her ICWA-020 form, she again identified possible Chippewa and Choctaw heritage. The juvenile court ordered DCFS to investigate the ICWA claims. Based on mother's representations of her lineage, ICWA notices were sent

---

[1] M.G. is a half-sibling to R.M., the child in the present dependency case. They have the same mother.

out on May 24, 2019 to Secretary of the Interior, Choctaw Nation of Oklahoma, the Choctaw ICWA representative, and the Mississippi Band of Choctaw Indians.[2] These notices did not contain information about the maternal grandfather, a point we discuss later.

Around this time, the social worker from mother's San Bernardino case told DCFS that mother had claimed Native American heritage in those dependency proceedings, but maternal family members refuted mother's heritage claim, and no tribe recognized the family.

In late June 2019, mother told DCFS she may have Choctaw, Chickasaw, or Chippewa Indian heritage through the maternal grandfather. Mother, however, refused to provide the maternal grandfather's contact information. She said he had a harsh temper and would be upset if questioned by DCFS. Mother was unable to explain how her family was affiliated with any Indian tribe and denied that she, the maternal grandfather, or other family members were registered with any tribe. She said she would provide DCFS with more information. Mother subsequently texted the social worker the names of family members, but without information about their Indian heritage.

---

[2] DCFS also sent notice to the Blackfeet tribe because mother had asserted that R.M.'s alleged father had Native American heritage. Following the July 2019 receipt of paternity test results, the alleged father was found to be unrelated to R.M., and DCFS ceased its ICWA investigation into his lineage. Son's biological father was never ascertained, and mother makes no argument on appeal as to biological father's lineage. Our discussion of ICWA inquiry and notice issues relates to mother's lineage.

On June 28, 2019, relying on Mother's latest representations, DCFS sent ICWA notices to 31 tribes.[3] The notices included R.M.'s name, birthdate, and location of birth; Mother's name, birthdate, and contact information; maternal grandmother and grandfather's names and birth dates; and the maternal grandfather's birthplace.

In July 2019, the maternal grandmother denied the maternal grandfather was registered with any Indian tribe or that he or mother had any Indian heritage.[4] She stated: "That is

---

[3] The tribes included: Choctaw Nation of Oklahoma, Jena Band of Choctaw Indians, Mississippi Band of Choctaw Indians, Bay Millis Indian Community, Sokaogon Chippewa Community of Wisconsin, Boise Fort Reservation, Turtle Mountain Band of Chippewa Indians, Fond du Lac Reservation, White Earth Indians, Grand Portage Reservation, Chippewa Cree Tribe of the Rocky Boy's Reservation of Montana, Keweenaw Bay Indian Community, Grand Traverse Band of Ottawa & Chippewa Indians, Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin, Hannahville Indian Community of Michigan, Lac du Flambeau Band of Lake Superior Chippewa Indians, Bad River Band of the Lake Superior Tribe of Chippewa Indians, Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan, Leech Lake Band of Ojibwe, Red Cliff Band of Lake Superior Chippewa, Mille Lacs Band of Ojibwe, Red Lake Band of Chippewa Indians, Sault Ste. Marie Tribe of Chippewa Indians of Michigan, St. Croix Chippewa Indians of Wisconsin, Minnesota Chippewa Tribe, Saginaw Chippewa Tribe of Michigan, Chickasaw Nation, Jena Band of Choctaw Indians, Choctaw Nation of Oklahoma, Mississippi Band of Choctaw Indians, and Mississippi Band of Choctaw ICWA representative.

[4] We observe Mother mistakenly refers to the maternal grandmother as the maternal great-grandmother in her briefing. The record makes no mention of the great-grandmother at the

something [mother] is trying to do to interrupt the Court process. She tried to do it here with [her fourth child, M.G.]." The maternal grandmother said she did not have the maternal grandfather's contact information and that he would not speak with DCFS because "he does not want to get involved with any of this."

On July 10, 2019, at DCFS's request, the juvenile court continued the hearing to allow additional time for the tribes to respond. On September 18, 2019, DCFS submitted proof that 11 tribes had responded that R.M. was not eligible for membership. That same day, the juvenile court made a finding that ICWA did not apply to this case.

By October 18, 2019, from the 31 total notices, DCFS had received 25 letters stating that R.M. was ineligible for membership or had signed copies of certified mail receipts from the tribes.[5] Six tribes had not yet responded. Based on this information, the court confirmed its previous finding that ICWA did not apply.[6]

From this point until termination of parental rights, DCFS received no additional responses from the tribes or any information that would give DCFS reason to believe that R.M. was an Indian child.

---

pages cited by mother. Rather, it discusses statements from the maternal grandmother.

[5] The signed certified mail receipts appear to indicate that the ICWA notices were actually delivered to the tribe.

[6] Mother makes no argument as to the six tribes that did not respond. The juvenile court impliedly found that R.M. was neither a member of those tribes nor eligible for membership.

On October 18, 2019, the court assumed jurisdiction over R.M. pursuant to Welfare and Institutions Code section 300, subdivisions (b)(1) and (j) based on mother's drug use and domestic violence history.[7] The court declared R.M. a dependent, removed him from his parents, and ordered no reunification services for mother or any alleged father. The court ordered that Mother was to have monitored biweekly two-hour visits.

Due to COVID-19 emergency procedures and other issues, the section 366.26 hearing was continued several times. On February 22, 2021, the court held the section 366.26 hearing. Mother was not present, but her counsel objected to termination of mother's parental rights. Counsel stated she had discussed the matter with mother, and they determined that no exception to the recommendation for adoption existed. The juvenile court found that R.M. was adoptable and that mother had not maintained regular visitation with him. It found no exception to adoption and terminated parental rights. It designated R.M.'s caregivers as the prospective adoptive parents and set the matter for further review. Mother appealed.

## DISCUSSION

Mother argues DCFS failed to satisfy its duty of inquiry into R.M.'s maternal ancestry because it did not obtain the ICWA notices in the San Bernardino case and did not contact the maternal grandfather. We begin with applicable ICWA principles.

### 1. ICWA Principles

The court and DCFS have "three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) These duties include "the

---

[7] All further undesignated statutory references are to the Welfare and Institutions Code.

initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).)

For the initial duty of inquiry, DCFS must "ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b))." (*D.S., supra,* 46 Cal.App.5th at p. 1052.) "At the first appearance in court of each party," the juvenile court is required to "ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) The juvenile court must "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

When "the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding," the court and DCFS have a duty of further inquiry. (§ 224.2, subd. (e); see also *D.S., supra,* 46 Cal.App.5th at p. 1052.)

"There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) Further inquiry requires "[i]nterviewing the parents, Indian custodian, and extended family members to gather . . . information" (§ 224.2, subd. (e)(2)(A)), including all "names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other

7

identifying information, if known" (§ 224.3, subd. (a)(5)(C)). (*D.F., supra,* 55 Cal.App.5th at pp. 566–567.)

The duty of formal notice to relevant Indian tribes is only required "[i]f the court, a social worker, or probation officer knows or has reason to know . . . that an Indian child is involved . . . ." (§ 224.3, subd. (a); see also *D.S., supra,* 46 Cal.App.5th at p. 1052.) Once notified, the tribe then decides whether the child is an "Indian child," i.e. a child who is "a member of an Indian tribe," or "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); §§ 224.1. subd. (a) & 224.3, subd. (a)(3); see *In re Gabriel G.* (2012) 206 Cal.App.4th 1160, 1165.)

We review the juvenile court's finding that ICWA does not apply for substantial evidence. (*In re S.R.* (2021) 64 Cal.App.5th 303, 312.)

## 2. DCFS Satisfied its Further Inquiry Duty

Mother essentially argues that DCFS should have engaged in further inquiry related to the San Bernardino ICWA notices and should have contacted the maternal grandfather. We address each contention in turn.

### a. ICWA Notices from San Bernardino

We first address mother's contention that DCFS should have obtained the San Bernardino case's ICWA notices. She asserts: "Had [DCFS] obtained the notices from San Bernardino county, that would have provided additional information for other extended family members and provided more information to the tribes to make their determination as to [R.M.]'s eligibility." She asserts DCFS should have noticed the Cherokee and Blackfeet tribes with the maternal grandfather's information, since those

8

tribes were noticed in the San Bernardino dependency case.[8] Mother asserts DCFS "had reason to believe [R.M.] may be an Indian child by the fact it was aware San Bernardino County Children and Family Services had sent out ICWA noticing to Blackfeet and Cherokee tribes."

We are not persuaded. The record shows that the Blackfeet and Cherokee tribes were noticed in the San Bernardino case, and after receipt of information from those tribes, the San Bernardino court determined ICWA did not apply. A finding that ICWA did *not* apply to the half sibling does not create a reason to believe R.M. may be Indian. Such information, in this case, proves the converse. As it is only mother's lineage at issue here, the lineage of the father in the San Bernardino case was irrelevant. The absence of any Native American lineage in San Bernardino was, thus, useful in determining R.M.'s lineage in the present proceedings. Mother fails to demonstrate that DCFS should have engaged in further inquiry as to the Blackfeet and Cherokee tribes.[9]

---

[8] These tribes were noticed early on in the present case based on the alleged father's heritage, but these notices did not provide maternal grandfather's information, a point we discuss later.

[9] Mother also argues that the "record is silent as to any efforts DCFS made to obtain [the San Bernardino Blackfeet and Cherokee] notices or any efforts it made to contact San Bernardino county to obtain further information on the maternal grandfather or other relatives." It is mother who is silent on what useful information might have been gleaned from the San Bernardino notices. The evidence was that notices were sent to the two tribes, and the San Bernardino court found ICWA did not apply.

### b. *Contacting the Maternal Grandfather*

Mother contends DCFS should have contacted the maternal grandfather. She argues, "the record is silent as to any efforts [DCFS] made to gather further information from the grandfather." We disagree. Here, DCFS pursued the paternal grandfather's contact information from mother and then from the maternal grandmother. First, mother refused to disclose the maternal grandfather's contact information. Mother told DCFS he had a harsh temper and would be upset if questioned by DCFS. Then, DCFS sought the grandfather's contact information from the maternal grandmother, who said she could not provide it to DCFS. She confirmed the grandfather would not speak with DCFS. The grandmother also explained that to her knowledge, the maternal grandfather did not have any Indian heritage, let alone possess tribal membership.

Mother does not propose additional actions DCFS should have undertaken or other leads it should have pursued to make contact with the maternal grandfather. Where there is a viable lead, DCFS "has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.). Nonetheless, ICWA does not obligate the court or DCFS "to cast about" for investigative leads. (*In re A.M.* (2020) 47 Cal.App.5th 303, 323.) The court and DCFS satisfy their duty of inquiry if the parent does not provide information requiring follow-up, or if individuals with additional information refuse to talk to DCFS. (*Ibid.*; see *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1468 [no duty to investigate further where no contact information was provided for the relative with information]; *In re K.M.* (2009) 172 Cal.App.4th 115, 119 [where agency cannot obtain additional

10

information for ICWA notice because of family hostility, the agency need not investigate further].)

Given that both mother and the maternal grandmother refused to or could not provide the maternal grandfather's contact information, and both said grandfather would not talk to DCFS, we conclude DCFS satisfied its duty of inquiry. DCFS properly proceeded to notice the tribes identified by mother with the maternal grandfather's name, birthdate, and birthplace.

### *DISPOSITION*

The juvenile court's order terminating parental rights is affirmed.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

KIM, J.

11