Filed 12/29/22  In re Melody P. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re MELODY P., a Person Coming Under the Juvenile Court Law. | B321955 |
| _____ VANESSA P., | (Los Angeles County Super. Ct. No. 20CCJP01837C) |
| Petitioner, | |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Parties in Interest. | |

Petition for extraordinary writ.  Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Petition denied.

Los Angeles Dependency Lawyers; Law Office of Martin Lee, Dominika Campbell and Maria Bradish for Petitioner Vanessa P.

Children's Law Center of California, Ann-Marissa Cook and Janelle Batta for Minor Melody P.

No appearance for Respondent.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel for Real Party in Interest.

———————————————

Vanessa P. (mother) filed a petition for extraordinary relief from the juvenile court's order setting a permanency planning hearing under Welfare and Institutions Code[1] section 366.26. At mother's request, we stayed the hearing pending the outcome on this petition, in which mother's sole contention is that the juvenile court erred by finding that the Los Angeles County Department of Children and Family Services (DCFS) adequately investigated her child's possible Indian ancestry, as required by the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related state statutes. We deny relief.

## BACKGROUND

Mother has seven children, but this petition concerns only Melody, who was born in October 2018. Melody's father is deceased. Based on mother's history of drug abuse and related drug-related criminal convictions, mother's parental rights have been terminated as to two of Melody's older siblings, Isaiah and Adrian. Melody and three of her other siblings lived with

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

2

maternal grandmother and maternal great-grandmother under a probate guardianship. When both guardians died in 2021 from COVID, Melody went to live with mother, who was in a residential treatment facility. Mother had also just given birth to her seventh child, Adelia, as to whom a juvenile petition was filed.

In October 2021, DCFS filed a non-detained petition as to Melody alleging failure to protect (§ 300, subd. (b)) and abuse of sibling (§ 300, subd. (j)). An ICWA-010 form attached to the petition stated that based on information mother had provided, there was reason to believe Melody might have Blackfeet, Choctaw, and Cherokee heritage. However, mother reported she was not a currently registered tribal member because her registration had expired, and her registration was no longer federally recognized per the Bureau of Indian Affairs (BIA). Mother also had never provided a requested blood sample, although it is unclear who requested the sample.[2] Mother also said that her native heritage was through the paternal side of her family, which included the surname L. Mother had no contact information for any person who might have additional information.

Based on this information, the juvenile court at the October 2021 detention hearing ordered DCFS to investigate mother's claim of Indian heritage.[3]

---

[2] A blood sample mother had given when she was a minor indicated she was 24.1 percent Native American, including Choctaw, Blackfeet, and primarily Cherokee from Ohio, North Carolina, and South Carolina.

[3] Mother had also filled out an ICWA-020 form stating she might have Blackfeet, Cherokee, and Choctaw heritage.

At the January 2022 adjudication hearing, the juvenile court sustained an amended petition in part. Melody was released to mother but was removed several months later due to mother's relapse and failure to comply with court orders. Melody was placed with her maternal great-aunt, who reported that she had no information about Indian heritage on the maternal side of the family.

Thereafter, at a hearing in March 2022, the juvenile court made a finding that ICWA did not apply to Melody's younger sibling Adelia based on responses received from tribes to ICWA-030 notices, which contained mother's date of birth and maternal grandfather's name (Carlos P.). The Cherokee Nation, Blackfeet Tribe, the Eastern Band of Cherokee Indians Tribe, the Choctaw Nation of Oklahoma, the Morongo Band of Mission Indians, and the Mississippi Band of Choctaw Indians reported that Adelia was either not enrolled or not eligible for enrollment in their tribes.

Notices to tribes had similarly been sent in sibling Adrian's case containing information provided by family members. Maternal great-aunt had reported that mother's Indian ancestry was through mother's father, Carlos Anthony P. Maternal grandmother provided his full name and date of birth but did not know where he currently lived, although she thought he might live in Las Vegas. Maternal grandmother said that neither Carlos Anthony P. nor his mother had ever registered with a tribe or lived on a reservation. Maternal great-grandfather (Carlos Anthony P.'s father), James L., had lived on a Cherokee reservation but had run away at age 12 or 13 and had died in 1990 or 1991. To maternal grandmother's knowledge, the family had no Choctaw or Blackfeet ancestry, and she had no additional

4

information. ICWA notices sent to tribes accordingly contained mother's name and date of birth, maternal grandmother's name, maternal grandfather's name (Carlos Anthony P.) and date of birth, and maternal great-grandmother's name (Ladine L.). The notices further stated that James L. had lived on a Cherokee reservation. And the social worker stated in a declaration that maternal grandmother had reported that mother was not registered with the Cherokee tribe, but mother had ancestry through Carlos Anthony P., who had never registered with the tribe. Based on responses from the noticed tribes, the juvenile court found that Adrian was not an Indian child.

As to Melody, DCFS had not been able to mail ICWA notices for her due to "technical" problems. Although DCFS thought that the juvenile court could rely on the notices sent for Adelia to make an ICWA finding as to Melody, DCFS suggested it would be more prudent to send notices for Melody. The juvenile court agreed with the suggestion and ordered DCFS to notice the appropriate tribes, the BIA, and the Department of the Interior. And, when the juvenile court asked for clarification whether mother had listed all appropriate tribes on her ICWA-020 form, mother's counsel said she would have to reconfirm with her client but "that should be everything."

From about March to April 2022, a social worker tried to interview mother about her Indian heritage, but mother did not make herself available. Mother finally contacted the social worker in April 2022 and confirmed that the information she had previously given was accurate. Mother said she did not speak to her father, maternal grandfather Carlos Anthony P., and did not have a phone number for him but said he resided in Phoenix, Arizona. Mother added that paternal great-grandmother's name

was either Geraldine or Ladine L., and she had died in 2004. Although mother said she would reach out to an uncle for more information and would text the social worker, mother never provided additional information and did not respond to the social worker's follow-up text.

In April 2022, DCFS mailed ICWA notices to the BIA, Secretary of the Interior, and the tribes. The Choctaw Nation of Oklahoma and Blackfeet tribes responded that they were unable to locate Melody or her ancestors in its records and had therefore determined she was not an Indian child. The Blackfeet tribe added that Melody needed a blood quantum of 25 percent to be eligible for enrollment in the tribe. DCFS received a return receipt from the Secretary of the Interior.

On June 6, 2022, the juvenile court found it had no reason to know that Melody was an Indian child. Then, on June 30, 2022, the juvenile court set a permanency plan hearing for October 2022.

Mother now petitions from the setting of the permanency plan hearing, contending that the juvenile court erred in finding that ICWA did not apply.

## DISCUSSION

I.    Relevant law

Congress passed ICWA in 1978 " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian

6

culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.)

California adopted conforming legislation in 2006 (Sen. Bill No. 678 (2005–2006 Reg. Sess.)), which was amended effective January 1, 2019 (Assem. Bill No. 3176 (2017–2018 Reg. Sess.)). As currently written, the law provides that the court and county welfare department have an affirmative and continuing duty to inquire whether a child for whom a petition may be filed is or may be an "Indian child" (§ 224.2, subd. (a))—that is, an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 U.S.C. § 1903(4); § 224.1, subd. (a) [adopting federal definition]).

The state law duty to make an ICWA inquiry "begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) If a child is removed from parental custody, the county welfare department "has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Further, at the first appearance in court of each party, "the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" and "shall instruct the parties to inform the court if they

7

subsequently receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

If the initial inquiry provides "reason to believe" that an Indian child is involved in a proceeding—that is, if the court or social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe"—then the court or social worker "shall make further inquiry" regarding the child's possible Indian status as soon as practicable.  (§ 224.2, subd. (e).) Further inquiry "includes, but is not limited to, all of the following:  (A) Interviewing the parents, Indian custodian, and extended family members . . . .  (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services . . . . [and] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility."  (*Ibid.*)

If there is "reason to know" a child is an Indian child, the agency shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5).  (§ 224.2, subd. (f).)  There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (§  224.2, subd. (d).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child," the court may make a finding that ICWA does

8

not apply to the proceedings, "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).)

We recently held *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004, that whether there is reason to know a child is an Indian child is fundamentally a factual inquiry reviewed for substantial evidence. Under that standard of review, we "should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts,' " but should uphold the lower court's determinations " 'if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.) However, whether a " 'proper and adequate further inquiry and due diligence' " has been conducted is reviewed for abuse of discretion. (*Ezequiel G.*, at p. 1004.)

If we conclude that the juvenile court erred in finding that an adequate ICWA inquiry was conducted, we will return the case to the juvenile court only if the error was prejudicial—that is, if "the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 779, review granted Sept. 21, 2022, S275578.) This test is "outcome focused," asking whether "it is reasonably probable that an agency's error in not conducting a proper initial inquiry affected the correctness (that is, the outcome) of the juvenile court's ICWA finding," and remanding only in those cases "in which the record gives the reviewing court a reason to believe that the remand may undermine the juvenile court's ICWA finding." (*Id.* at pp. 781–782.)

II.    No prejudicial error occurred

Mother's responses to the initial ICWA inquiry unquestionably gave rise to a reason to believe that Melody might be an Indian child. Mother nonetheless contends that the juvenile court and DCFS failed to conduct an adequate further inquiry into whether Melody is an Indian child for two reasons. First, DCFS did not try to obtain her registration number or to confirm it was no longer federally recognized. Second, the juvenile court erroneously relied on notices in the siblings' cases in making its ICWA finding. The minor, Melody, has submitted a letter brief raising a third reason why reversal is required: DCFS made no meaningful effort to locate maternal grandfather. None of these purported reasons presents a ground for reversal.

As to mother's first contention that DCFS did not try to obtain her registration number, there's no indication in the record that this information was available. Although mother said she had Indian ancestry through three tribes and had been registered with a tribe, she never identified the tribe with which she claimed to have been registered or provided her registration number. At a hearing, mother's attorney said she would confirm with mother that all tribes were listed but "that should be everything." When the social worker asked mother for information about her Indian ancestry, mother did not provide her registration number and said she had no additional information, raising the reasonable inference she did not know the number. Nor has mother provided her registration number on appeal. Since there is no indication that anyone else knows the registration number, it is clear that even if DCFS had made further inquiry, that inquiry would not have yielded the missing information.

10

Mother cannot now complain that DCFS failed to ask for information uniquely within her control. If mother had her registration number, then she should have given it to DCFS. Withholding such information would be improper gamesmanship. ICWA "is not a 'get out of jail free' card dealt to parents of non-Indian children, allowing them to avoid a termination order by withholding secret knowledge, keeping an extra ace up their sleeves. Parents cannot spring the matter for the first time on appeal without at least showing their hands. Parents unable to reunify with their children have already caused the children serious harm; the rules do not permit them to cause additional unwarranted delay and hardship, without any showing whatsoever that the interests protected by the ICWA are implicated in any way." (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431.)

For this reason, we are similarly unpersuaded that DCFS and the juvenile court erred by failing to ascertain whether mother's registration and/or the tribe she had been registered with were no longer federally recognized.[4] Despite repeated inquiries by DCFS, mother never provided her registration number or indeed clearly identified the tribe with which she had been registered.

Second, mother argues that the juvenile court erred in relying on notices sent in Melody's siblings' cases to make its ICWA finding in Melody's case. That is incorrect. At the juvenile court's direction, DCFS sent notices to the appropriate tribes, the

---

[4] Mother said that her registration was not federally recognized, but her opening brief on appeal says that her tribe was no longer federally recognized.

11

BIA, and the Department of the Interior in Melody's case.[5]  The Blackfeet and Choctaw Nation of Oklahoma tribes responded to that notice, stating they were unable to find Melody on their tribal rolls.  The Blackfeet tribe added that the blood quantum requirement for enrollment was 25 percent Blackfeet blood, so Melody was "not eligible for enrollment."

Finally, Melody argues that the ICWA inquiry was inadequate because DCFS did not try to locate maternal grandfather, Carlos Anthony P.  However, DCFS *did* ask mother about maternal grandfather, and mother said she didn't speak to him or have a phone number for him, although she thought he lived in Phoenix, Arizona.  Although mother said she would reach out to an uncle for more information, she never gave any additional information to the social worker and did not respond to the social worker's follow-up text.  Also, maternal grandmother had reported in sibling Adrian's case that maternal grandfather was not registered with a tribe and had never lived on a reservation.  Therefore, DCFS did comply with any further duty of inquiry about maternal grandfather.  (See, e.g., *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082–1083 [father said he might have Cherokee heritage but refused to provide further information to DCFS]; *In re A.M.* (2020) 47 Cal.App.5th 303, 323 [agency's failure to interview maternal relatives was reasonable where mother could not provide information about maternal

---

[5]  We grant DCFS's motion, filed on October 14, 2022, to augment the record or to take judicial notice of additional documents, including the cover page of the ICWA-030 notice in Melody's case.  (See generally Evid. Code, § 452, subd. (d).) Although DCFS located the notice's cover page, the notice itself is missing.

12

relatives and no maternal relative appeared at any hearing or participated in the matter]; *In re K.M.* (2009) 172 Cal.App.4th 115, 119 [where agency "attempted on several occasions to elicit further information from the child's family, but was unsuccessful due to the family's hostility" toward agency, agency "did all that can or should be reasonably expected of it to meet its obligation to the child, to the family, to the tribes and to the court"]; compare *In re G.H.* (2022) 84 Cal.App.5th 15, 23–24, [father identified paternal grandmother as information source and contacted her through social media].)

But even if error occurred in the further inquiry into Melody's possible Indian ancestry, the notices sent in Melody's siblings' cases and the attendant findings that ICWA did not apply to the siblings demonstrate that no prejudicial error occurred in Melody's case.[6] (See generally *In re Dezi C.*, *supra*, 79 Cal.App.5th at pp. 781, rev.gr. [remand required only if error was prejudicial, meaning information suggests a reason to believe child may be an Indian child].) As to sibling Adelia, the Cherokee Nation, Blackfeet Tribe, the Eastern Band of Cherokee Indians Tribe, the Choctaw Nation of Oklahoma, the Morongo Band of Mission Indians, and the Mississippi Band of Choctaw Indians reported that Adelia was either not enrolled or not eligible for enrollment in their tribes. As to sibling Adrian, the notices contained mother's name and date of birth, maternal grandmother's name, maternal grandfather's name (Carlos

---

[6] The augmentation request included a jurisdiction report from sibling Adrian's case. According to it, maternal grandmother reported that maternal great-grandmother was never registered with a tribe and had never lived on a reservation.

13

Anthony P.) and date of birth, and maternal great-grandmother's name (Ladine L.). The notice further stated that James L. had lived on a Cherokee reservation. However, Adrian was also found not to be an Indian child. Because at least two of Melody's siblings were found not to be Indian children *after* notices had been sent to the tribes, no prejudicial error occurred in Melody's case regarding the ICWA finding as to her.

Further, Melody was placed with a maternal aunt. Where a child is placed with family holding Indian roots, ICWA's purpose—preventing removal of Indian children from their Indian families—is not implicated. (*In re J.W.* (2022) 81 Cal.App.5th 384, 390; see also *In re S.S.* (2022) 75 Cal.App.5th 575, 582 [family members seeking placement of children have incentive to raise any Indian ancestry].)

Given all this, we conclude that the further ICWA inquiry conducted here yielded reliable information that Melody is not an Indian child within the meaning of ICWA, as the juvenile court found, and, in any event, prejudice from any error has not been shown.

## DISPOSITION

The petition is denied.  The stay of the permanency plan hearing is lifted.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

EGERTON, J.

LAVIN, J., Concurring:

The Department of Children and Family Services (Department) and the juvenile court should have made a better record of the Department's investigative efforts to determine the child's possible Indian ancestry. Nevertheless, I agree that the petition should be denied and the stay should be lifted.


LAVIN, J.

1