Filed 4/2/24  In re B.M. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re B.M., a Person Coming Under the Juvenile Court Law. | C098400 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>H.M.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 22JV3245101) |

Appellant, who is father of the minor, appeals from the juvenile court's jurisdictional and dispositional orders.  (Welf. & Inst. Code §§ 300, 361, 395; undesignated statutory references are to this code.)  Father claims (1) the juvenile court violated his right to be present at the jurisdiction and disposition hearing, (2) the court and the Shasta County Health and Human Services Agency (Agency) failed to adequately comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1900,

1

et seq.) (ICWA), and (3) the court erred when it denied visitation between father and the minor.

Finding father's ICWA claim is premature, and his remaining claims lack merit, we affirm the juvenile court's orders.

FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2022, the Agency filed a dependency petition on behalf of the then 15-year-old minor pursuant to section 300, subdivisions (b), (c), and (g) alleging failure to protect and serious emotional damage due to substance and alcohol abuse and domestic violence issues between mother and the minor's stepfather and failure to provide support due to father's incarceration in federal prison. The petition was also filed on behalf of the minor's half-sibling, who is not a party to this appeal. Father's criminal history included robbery, murder, possession of a dangerous weapon, hit and run, and driving under the influence.

Mother reported the minor had been diagnosed with serious mental health and behavioral issues, including autism, intermittent explosive disorder, and obsessive-compulsive disorder with possible bipolar and borderline personality disorder. The minor was reportedly not receiving any mental health services, medical treatment, or medication and had been to a psychiatric facility at least five times in the past two years for attempted suicide.

At the December 2, 2022 detention hearing, the court appointed counsel for father. The court ordered visitation between the minor and father "upon request," with the Agency having discretion to increase or decrease visits depending on the parent's progress and the best interests of the minor.

At the detention hearing, the court inquired of mother and stepfather about possible Indian ancestry. Both denied any such heritage. The Agency detention report indicated, and mother's parental notification of Indian status confirmed, that mother had no known Indian heritage. The court directed mother and stepfather to speak with family

2

members regarding possible Indian ancestry and bring any relevant information to the attention of the Agency and the court.

In its disposition report filed January 13, 2023, the Agency detailed its family finding efforts for placement, identifying 15 maternal relatives, 11 of whom were sent relative notification letters. Because father and stepfather were both still listed as "alleged," no paternal relative finding had been initiated. Relative notification letters had been sent to seven additional maternal relatives but none had responded. The report indicated that ICWA was still pending verification as to the minor. Finally, the Agency recommended the court bypass father for reunification services due to his incarceration and release date in 2027.

The jurisdiction and disposition hearing was originally scheduled for January 17, 2023. On that date, father's counsel was present and advised the court that father was still incarcerated in federal prison. Mother's counsel reported that mother was in custody at the county jail. At the request of counsel, the court continued the hearing to February 3, 2023.

The jurisdiction report filed on January 23, 2023, stated the ICWA was still pending verification as to the minor. The report also referred to an inmate register confirming father was incarcerated in federal prison in Victorville, California with an expected release date in 2027.

On February 3, 2023, another attorney specially appeared for father's counsel. The court again continued the hearing to February 24, 2023. A copy of the minute order was sent to father's counsel.

On February 24, 2023, father's counsel was present when the court again continued the jurisdiction and disposition hearing to March 17, 2023. Father's counsel submitted on behalf of father a statement regarding paternity (form JV-505). Several days later, father filed the JV-505 along with a notification of mailing address, a signed notice of rights and responsibilities (that included an acknowledgement of his right to an

3

attorney and to be present at all hearings), and a parental notification of Indian status indicating father had no known Indian ancestry. In the JV-505, father stated he lived with the minor from May 2007 until March 2008, after which he had custody of the minor on weekends until he was arrested and ultimately incarcerated in May 2012.

The Agency's addendum report filed March 16, 2023, set forth father's family history, including that his parents were deceased and he had two siblings. During the interview to obtain father's family history, father admitted he had been in prison for much of the minor's life and he either did not know or was unable to provide information regarding her medical history, her favorite foods, her extracurricular activities, or whether she was even attending school. Father stated that, once he was released from prison, he planned to marry his girlfriend and move to Michigan.

The continued jurisdiction and disposition hearing finally commenced on March 17, 2023. Father's counsel informed the court that father was in custody in Victorville and submitted on the Agency's reports. The court found notice had been given as required by law, adopted the Agency's recommended jurisdiction and disposition findings and orders, found ICWA was still pending verification, found father was a presumed father, ordered the minor removed from mother's and stepfather's custody, and bypassed father's reunification services "given his incarceration." In support of the bypass order, the court found "by clear and convincing evidence that reunification services would be detrimental to the child. In determining detriment, the court has considered the age of the child, the degree of parent-child bonding, the length of the sentence, the nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, and any other appropriate factors."

4

DISCUSSION

I

*Right to Appear*

Father contends the juvenile court erred when it failed to issue an order for his appearance at the jurisdiction and disposition hearing. He claims the court violated his right to be present that requires us to conduct structural error analysis or, alternatively, harmless error analysis. The claim lacks merit.

"Penal Code section 2625 establishes a procedure through which state prisoners incarcerated in California are able to attend dependency hearings held in California. There is no statutory equivalent establishing a procedure to facilitate the attendance of out-of-state or federal prisoners. However, the absence of such an equivalent does not require the juvenile court to suspend dependency proceedings pending [the incarcerated parent's] release from federal custody. Nor is the juvenile court deprived of its jurisdiction to proceed." (*In re Maria S.* (1997) 60 Cal. App.4th 1309, 1312.) The definition of "prisoner" in Penal Code section 2625 does not include persons incarcerated in a federal prison or other facility. (Pen. Code § 2625, subd. (a).)

Penal Code section 2625, subdivision (b) provides that, in a proceeding brought under section 366.26 to terminate the parental rights of a prisoner, or brought under section 300 to adjudicate the prisoner's child a dependent child of the juvenile court, "the superior court of the county in which the proceeding is pending, or a judge thereof, shall order notice of any court proceeding regarding the proceeding transmitted to the prisoner."

Father claims that because the jurisdiction and disposition hearing was a proceeding brought under section 300 to adjudicate the minor a dependent child (Pen. Code § 2625, subd. (b)), he had a right to attend the hearing. We disagree. Our Supreme Court held in *In re Jesusa V.* (2004) 32 Cal.4th 588 that "no denial of due process has been found where the prisoner-parent is unable to attend because he or she is in the

5

custody of another state or the federal government and is instead represented by counsel." (*Id.* at p. 626.) Father was incarcerated in a federal prison in Victorville, California. He was represented by counsel at the hearing. Accordingly, Penal Code section 2625 did not compel his attendance at the hearing.

Father asserts without citation to authority that the juvenile court should have at least provided him with notice of the hearing in the event the federal prison had the ability to facilitate his telephone or online appearance. We conclude that "an argument raised in such [a] perfunctory fashion" is forfeited. (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4 [argument may be forfeited if it is raised in a perfunctory fashion (i.e., one paragraph) without any supporting analysis and authority].)

Father claims the juvenile court failed to issue an order for his appearance at the hearing. Penal Code section 2625, subdivision (d), provides that, "[u]pon receipt by the court of a statement from the prisoner or the prisoner's attorney indicating the prisoner's desire to be present during the court's proceedings, the court shall issue an order for the temporary removal of the prisoner from the institution, and for the prisoner's production before the court." That subdivision further provides that a hearing on a section 300 petition "may not be adjudicated without the physical presence of the prisoner *or the prisoner's attorney*. . . ." (*Ibid*, italics added.) As previously noted, Penal Code section 2625 did not compel father's attendance at the hearing. In any event, father received meaningful access to the hearing through his appointed counsel who was present at the hearing, and he does not claim that either he or his attorney provided the juvenile court with a statement reflecting his desire to attend.

For the first time in his reply brief, father argues Penal Code section 2625 unconstitutionally deprived him of equal protection in violation of the Fourteenth Amendment to the United States Constitution. " 'The general rule is that points raised in a reply brief for the first time will not be considered unless good cause is shown for the

6

failure to present them before.' [Citation.]" (*In re Tiffany Y.* (1990) 223 Cal. App.3d 298, 302.) Father offers no such reason here. So we decline to consider his belated argument.

Because we have concluded the juvenile court did not err, we need not reach father's argument regarding structural or harmless error analysis.

## II

### *ICWA*

Father contends the Agency's inquiry into the minor's possible Indian ancestry was insufficient because the Agency had information regarding numerous maternal and paternal relatives but failed to inquire of those relatives as required by the ICWA. As we explain, the juvenile court had yet to make an ICWA finding at the time of this appeal and the ICWA inquiry is ongoing in that court. Accordingly, we will dismiss the ICWA claim as premature.

The juvenile court and the Department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).) (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, rev. granted Oct. 12, 2022, S276056; see also *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) "[I]f that initial inquiry creates a 'reason to believe' the child is an Indian child, then the [Department] 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' " (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

The Agency bears the burden "to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the [Bureau of Indian Affairs]." (*In re Louis S.* (2004) 117 Cal.App.4th 622, 630; § 224.2, subd. (a).)

Father claims the juvenile court erroneously shifted its burden away from the Agency to the parents when it "ordered" the parents to speak with family members about possible Indian heritage and provide any relevant information to the Agency. Not so.

Section 224.2 requires the juvenile court to "ask each participant present in the hearing" whether he or she knows or has reason to know the minor has Indian heritage, and to "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) As the Agency aptly notes and the record reflects, the juvenile court complied with the statute by "direct[ing]" the parents to speak to family members about any Indian ancestry and bring any relevant information to the attention of the Agency. We see nothing in the record to suggest that in doing so the juvenile court either expressly or impliedly relieved the Agency of its continuing duty of inquiry.

In any event, at the March 17, 2023, jurisdiction and disposition hearing from which father appeals, the juvenile court ultimately found the ICWA was still pending verification as to the minor. Because the juvenile court made no final ruling at or before the challenged hearing as to whether the ICWA applied to the proceedings, father's claim is premature. That is, any ICWA issues are not yet ripe for review. " 'Ripeness' refers to the requirements of a current controversy." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) An issue is not ripe for review unless and until it is "sufficiently concrete to allow judicial resolution even in the absence of a precise factual context." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170.) Because the minor's dependency case is still ongoing, any perceived deficiencies with ICWA inquiry and noticing may still be brought to the juvenile court's attention and may be resolved during the normal course of the ongoing dependency proceedings. (See *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [ICWA claim was premature where no final ICWA ruling was made at dispositional hearing].)

## III

### *Visitation*

Finally, father contends the juvenile court erred in denying him visitation with the minor based solely on the fact that he was incarcerated and without finding detriment as required by section 361.5, subdivision (f). The claim lacks merit.

Section 361.5, subdivision (e)(1), provides in relevant part that where, as here, a parent is incarcerated, "the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child. In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in subdivision (a), and any other appropriate factors." The services identified in subdivision (e)(1) include visitation "when appropriate." (§ 361.5, subd. (e)(1)(A) &(C).)

Section 361.5, subdivision (f), provides that where, as here, the juvenile court does not order reunification services, the court "*may* continue to permit the parent to visit the child unless it finds that visitation would be detrimental to the child." (Italics added.)

At the March 17, 2023, jurisdiction and disposition hearing, after considering the Agency's report and hearing argument from counsel, the juvenile court ordered that reunification services "shall not be provided to the father . . . given his incarceration." In support of that order, the court adopted "as its own" the Agency's recommended findings and orders contained in the January 13, 2023 disposition report, which included the following: "[S]ervices shall not be provided to father [H.M.], pursuant to § 361.5(e)(1) . . . in that [father] is incarcerated or institutionalized, and the Court finds by clear and

9

convincing evidence that reunification services would be detrimental to the child. In determining detriment, the court has considered the age of the child, the degree of parent-child bonding, the length of the sentence, the nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and . . . the child's attitude toward the implementation of family reunification services, and any other appropriate factors."

It is clear from the record that, in denying father's reunification services, the juvenile court considered the factors set forth in section 361.5, subdivision (e)(1), and determined by clear and convincing evidence that services would be detrimental to the minor. Father does not challenge the juvenile court's denial of reunification services; rather, he claims the juvenile court was required to make a detriment finding to deny him visitation with the minor. Not so. Once the court denied reunification services, the provision of visitation was discretionary. (§ 361.5, subd. (f); *In re J.N.* (2006) 138 Cal.App.4th 450, 457.) That is, the court has "discretion to permit or deny visitation when reunification services are not ordered, unless of course it finds that visitation would be detrimental to the child, in which case it must deny visitation." (*In re J.N.* at p. 458.) The juvenile court bypassed father for reunification services and then exercised its discretion to deny visitation.

Father claims the juvenile court erred because, even though father was bypassed for reunification services, the court did not consider visitation "merely due to his incarceration." *In re Jonathan M.* (1997) 53 Cal.App.4th 1234, 1238 [a geographical limit on the visitation component of an incarcerated parent's reunification plan, alone, is not sufficient to find detriment for purposes of denying reunification services], overruled in part by *In re Zeth S.* (2003) 31 Cal.4th 396, and *In re Brittany S.* (1993) 17 Cal.App.4th 1399 [where there has been no finding that reunification services would be detrimental to the minor, juvenile court must order a reasonable reunification plan, including visitation], he argues that visitation may not be denied based solely on the fact that a parent is

10

incarcerated. However, father misinterprets those cases, as they are factually distinguishable and ultimately consistent with our interpretation of section 361.5, subdivision (e)(1).

In *In re Jonathan M.*, *supra*, 53 Cal.App.4th 1234, the juvenile court ordered reunification services for a parent who was incarcerated 275 miles away from the minor but denied the visitation component of the reunification plan based solely on a geographical limitation of 50 miles. (*Id.* at p. 1236.) The appellate court set aside the order as arbitrary under section 361.5, subdivision (e)(1), noting reunification services are to be provided to a parent unless to do so would be detrimental to the minor and, while distance could be considered as a factor, a detriment finding may not be based on geography alone. (*Jonathan M.* at pp. 1236-1239.) The case before us differs from *In re Jonathan M.* in that the juvenile court here denied father reunification services, finding detriment after considering all the applicable factors set forth in section 361.5, subdivision (e)(1).

*In re Brittany S.*, *supra*, 17 Cal.App.4th 1399, is also factually distinguishable. There, the juvenile court ordered reunification services for the incarcerated parent. However, the visitation component of the reunification plan developed by the agency required that the parent not be incarcerated in order to have visits with the minor. (*Id.* at pp. 1402-1402.) The appellate court reversed the juvenile court's termination of parental rights, finding the agency failed to provide the parent with reasonable services and with any in-person visitation at all despite that the parent was only incarcerated 36 miles away. (*Id.* at pp. 1404, 1406-1408.) In contrast, here the juvenile court bypassed father's reunification services after finding detriment and thereafter properly exercised its discretion to deny visitation.

Father asserts the juvenile court abused its discretion in denying visitation because it was in the minor's best interest to allow reasonable contact via telephone or mail, father was a nonoffending parent, he had no history of child abuse or neglect, and he was an

11

involved parent as he was present at the minor's birth and he had joint custody of her for the first few years of her life until he was incarcerated. We disagree with this argument. Father completed a statement regarding parentage which confirmed father briefly lived with the minor from the time of her birth in May 2007 until April 2008. Thereafter, he had custody of the minor only on weekends from April 2008 until he was arrested in May 2012. However, there is no evidence in the record that father had any contact with the minor after his arrest and incarceration in May 2012. Father remains incarcerated in federal prison. The minor has serious mental health and behavioral issues and had been to a psychiatric facility numerous times in the past two years for attempted suicide. Yet, when interviewed in 2023, father indicated he had no knowledge of the 15-year-old minor's medical history, nor did he know her extracurricular activities, her favorite foods, or her educational status, stating, "I don't know anymore, I've been in prison for 11 years." Further, while father claimed he wanted to file for a compassionate release and take custody of the minor, he also planned to leave California and move to Michigan. These facts demonstrate the absence of a significant relationship between the minor and father, who is not scheduled for release from prison until late 2027, well past the applicable reunification time limitation of 12 months. (§ 361.5, subd. (a)(1)(A).) The juvenile court did not abuse its discretion in denying father visitation with the minor.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

                                          /s/
                                          MESIWALA, J.

We concur:


/s/
HULL, Acting P. J.


/s/
RENNER, J.