Filed 9/11/25  In re M.F. CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re M.F., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br> v. <br> M.H., <br><br> Defendant and Appellant. | A172662 <br><br> (San Francisco City & County Super. Ct. No. JD23-3004) |

M.H. (Father) appeals from a judgment terminating his parental rights over M.F. (Minor) after a Welfare and Institutions Code section 366.26 hearing.[1]  Father argues the San Francisco Human Services Agency (Agency) failed to comply with the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA).[2]  We affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] As ICWA and related California statutes use the term "Indian," we occasionally do the same for the sake of clarity and consistency while acknowledging that other terms (such as "Native American" or "indigenous")

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, the Agency received a report that Father had hit, bound and strangled A.F., Minor's mother (Mother), while one-month-old Minor was present. Mother was brought to the hospital where she was incoherent, unable to properly hold Minor, and tested positive for cannabis and benzodiazepines. A few days later, the Agency filed a section 300 dependency petition seeking to detain Minor. The petition alleged Minor came within the jurisdiction of the juvenile court based on Father's arrest for domestic violence towards Mother, and Mother's substance abuse and mental health issues, among others. The petition also noted that a prior dependency proceeding involving Minor's half brother (Minor's Brother) had previously resulted in the termination of Father's parental rights.

The section 300 petition also included an ICWA inquiry attachment which stated the Agency had inquired with both parents and determined there was no reason to believe Minor may be a Native American child. The detention report filed by the Agency the following day stated that, when asked, Father denied having any knowledge of Native American ancestry while Mother acknowledged the possibility of having Native American ancestry though she denied registration or knowledge of a specific tribe.

At the detention hearings, the juvenile court ordered Minor removed from parents and detained in foster care. The court also voir dired both parents regarding Native American ancestry and ordered the Agency to follow up with them regarding the ICWA inquiry.

Later that month, the Agency filed an addendum report stating it had requested that Mother ask the maternal grandmother about whether the

---

are preferable. (See *In re A.A.* (2023) 88 Cal.App.5th 393, 396, fn. 1.; *In re G.H.* (2022) 84 Cal.App.5th 15, 27, fn. 2.)

family had Native American ancestry.[3]  The Agency also indicated it attempted but was unable to reach the maternal grandmother, who shared a cell phone with Mother.  The Agency therefore concluded the initial ICWA inquiry was incomplete and further inquiry was necessary.

Towards the end of January 2023, Father filed an ICWA-020 form indicating that he may be a member of or eligible for membership in a federally recognized Indian tribe.  However, he did not list the names or locations of any tribes.  Shortly thereafter, Mother filed an ICWA-020 form now indicating that she did *not* have any Native American ancestry.

One month later, the Agency filed a disposition report stating that in early February 2023, Mother stated she identified as Native American but did not know which tribe she would be affiliated with, was not involved with a tribe, did not live on a reservation, and did not use any services provided to Native Americans.  Mother also indicated she was unaware of anyone in her family who would have information regarding Native American ancestry.  The report stated that maternal grandfather was deceased, Mother had no contact with his family, and Mother provided no contact information for maternal relatives.  Additionally, the disposition report stated that on February 2 and February 14, 2023, the Agency had attempted to contact Father, who was incarcerated and awaiting trial, but had not been able to speak with him.  The Agency also indicated that Minor had a half brother on Father's side whose whereabouts were unknown.  The Agency concluded there was no reason to believe or know that Minor was an Indian child.

---

[3] The Agency also asked Mother about another man she was claiming was Minor's alleged father, but Mother had no contact information for that man's friends or relatives.  We will not further discuss the Agency's line of inquiry relative to this other man because a paternity test later established that Father was Minor's biological father.

After the jurisdiction and disposition hearing was continued from February 2023 to March 2023, the Agency filed two addendum reports. In the first addendum report, the Agency stated that Mother once again identified as Native American but could not name a tribe, had never used services, lived on a reservation, or attended cultural activities on a reservation. The Agency also stated that on February 24, Father declined to respond to the Agency's ICWA inquiries. The Agency therefore requested that the juvenile court order Mother to provide contact information for maternal relatives and Father to provide ICWA information.

In the second addendum report, the Agency stated that Father did not respond to texts or phone calls from February 24, 2023, to March 7, 2023, and that on March 7, he declined to respond to the Agency's ICWA inquiries. Based on the foregoing, the Agency concluded there was no reason to know Minor was an Indian child, and recommended that the juvenile court find an adequate further inquiry was conducted and ICWA did not apply. The Agency also filed a request for judicial notice of court records from a prior dependency proceeding involving Minor's Brother, now an adult, wherein the juvenile court found that ICWA did not apply.

At the jurisdiction hearing, the juvenile court sustained the section 300 petition, granted Mother's request for a three-year restraining order against Father, and set the matter for disposition. The court also indicated that the ICWA status would be addressed at the disposition hearing.

In advance of the disposition hearing, the Agency filed an addendum report stating that Mother continued to identify as Native American, without any further details to support this representation. As for Father, the Agency stated he continued to decline to respond to ICWA inquiries and "ha[d] not engaged with the Agency during the investigation."

4

After the disposition was continued due to a change in Father's counsel, the Agency filed another addendum report before the continued hearing date. In this report, the Agency stated that Father had declined to answer questions relating to ICWA on two occasions, but it had spoken with Father on April 19, 2023, and Father stated he did not know if he had Native American ancestry. Father also indicated he had never used services for Native Americans, resided on a reservation, or attended cultural events on a reservation. The Agency noted that Father had been "very difficult to engage throughout the investigation," would decline to respond to questions, or would become upset with or speak over the social worker. The Agency once again concluded there was no reason to know Minor was an Indian child, and recommended that the juvenile court find an adequate further inquiry was conducted and ICWA did not apply.

At the disposition hearing held in May 2023, the juvenile court declared Minor a dependent of the court and ordered reunification services for Mother. The court set a later hearing to address the issue of reunification services for Father.

Before the June 2023 hearing, the Agency filed an addendum report wherein it stated that Mother continued to identify as Native American, without further supporting this representation. The Agency was also able to meet in person with Father who stated he did not have any Native American ancestry, had never lived on a reservation, and had never participated in reservation activities. Further, the Agency noted it had contacted Minor's Brother, who stated that Father was supported by Father's sister who also lived in the Bay Area. Father also informed the Agency that he was requesting reunification services as he and his brother were in foster care during their childhood, and he did not want the same for Minor. The Agency

5

concluded there was no reason to know Minor was an Indian child, and requested that the juvenile court find ICWA did not apply.

The juvenile court held hearings on the issue of Father's request for reunification services in June 2023, August 2023 and September 2023. Before the August 2023 hearing, the Agency filed an addendum report stating it had spoken further with Mother regarding her claims of Native American ancestry, and Mother had stated she believed she had Native American ancestry as "she ha[d] read several books because she enjoy[ed] history." Mother could not further explain what other information led her to believe she was Native American. The Agency also indicated it had spoken again with Father, who again stated he did not have Native American ancestry; Father also stated he did not have any relatives the Agency could contact to discuss the issue. The Agency further stated maternal grandmother had not responded to three separate attempts to contact her, and Minor's Brother stated on two occasions that he was unaware of Native American ancestry and did not have contact with paternal relatives. Based on the foregoing, the Agency concluded there was no reason to know Minor was an Indian child and requested that the juvenile court find a proper and adequate further inquiry had been conducted by the Agency.

At the August 2023 hearing, the juvenile court renewed Minor's dependency status and stated it would not order visitation for Father at that time. At the September 2023 hearing, the court renewed Minor's dependency status, found that visitation by Father would be detrimental to Minor's physical and emotional well-being, and denied Father's request for reunification services. The court also set a six-month review hearing for October 2023.

Before the October 2023 hearing, the Agency filed a status review

6

report setting out its ICWA inquiry efforts to date. In addition to recounting the outcome of its prior inquiries, the Agency stated it interviewed Mother about her purported Native American ancestry and was told Mother had an " 'Aunt Pearl' " or a " 'Nance Farin Jones' " (relationship to Mother unknown), who might have relevant information. Mother did not have contact information for either individual. Mother also said she thought she may have relatives from a tribe or reservation somewhere north of California but could not say why she thought this. Mother also did not know of any relatives who lived on a reservation, attended boarding school, or attended a Native American health center for medical or dental work. The Agency attempted to contact maternal grandmother once more but the phone number provided was out of service. The Agency concluded there was no reason to know Minor was an Indian child and requested that the juvenile court find a proper and adequate further inquiry had been conducted.

The six-month review hearing was continued to January 24, 2024 for a contested hearing. The Agency filed an addendum report beforehand in which it stated it had made one more attempt to contact maternal grandmother, but the number provided could not accept calls. The Agency also spoke with a maternal grand-aunt who said she was not aware of any Native American ancestry or of any relatives who lived on a reservation. Based on the foregoing, the Agency concluded there was no reason to know Minor was an Indian child and recommended that the juvenile court find that a proper and adequate further inquiry was conducted. It also recommended termination of Mother's services based on the fact Mother continued to miss visits with Minor and had not participated in services to address her substance abuse and mental health issues, among others.

At the January 2024 contested hearing, the juvenile court renewed

Minor's dependency, continued reunification services, ordered Mother to participate in a psychological evaluation, and set a 12-month review hearing. The court also checked a box on the ICWA Findings attachment stating that it had found that there was reason to know Minor was an Indian child; checked a box indicating that notice had been provided to the applicable tribes and the Agency had exercised due diligence to work with all tribes the child could be a member of to verify the child's eligibility or membership status; and checked the box stating that ICWA did not apply.[4]

Before the 12-month review hearing, the Agency filed a couple of additional reports in which it noted the juvenile court had previously found ICWA did not apply. It also continued to recommend termination of Mother's reunification services due to her lack of participation.

At the 12-month review hearing held in June 2024, the juvenile court terminated Mother's reunification services, denied a section 388 petition Father filed requesting custody of Minor and reunification services, and set a section 366.26 implementation hearing. The Agency filed a couple of additional reports before the section 366.26 hearing that eventually took place in January 2025; these reports contained no additional ICWA information and merely noted the court previously found that ICWA did not apply. At the section 366.26 hearing, the court terminated Father's parental rights and found by clear and convincing evidence that Minor would likely be adopted.

---

[4] There appears to be a clerical error on the ICWA Attachment as the record does not indicate there were any tribes to notify nor does it indicate there was any notice provided to such tribes. Father attempts to latch onto this error in his reply, arguing the juvenile court expressly found there was reason to know Minor was an Indian child and such knowledge triggered the formal notice requirements under ICWA. There is no merit to this contention for the reasons set forth below.

8

This appeal by Father followed.

## II. DISCUSSION

Father contends on appeal that the Agency failed to adequately inquire as to Minor's Native American heritage. Thus, he requests that the order terminating his parental rights be conditionally affirmed and the matter remanded for the Agency to comply with ICWA.

### A.     *Applicable Legal Principles and Standard of Review*

Congress enacted ICWA in 1978 in response to " 'abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1128 (*Dezi*).) This separation of Indian children " 'contributed to a number of problems, including the erosion of a generation of Indians from Tribal communities, loss of Indian traditions and culture, and long-term emotional effects on Indian children caused by loss of their Indian identity.' " (*Ibid.*) ICWA sought to redress these practices, in part, by "establish[ing] minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes," and allowing an Indian child's tribe to " 'intervene at any point' " in a proceeding involving the removal of an Indian child from their family. (*Dezi,* at p. 1129.)

Whether ICWA applies in a dependency proceeding turns on whether an "Indian child" is involved.[5] (*In re A.A.*, *supra*, 88 Cal.App.5th 393, 399.)

---

[5] An "Indian child" is defined as "[a]ny unmarried person who is under 18 years of age" who is either "(A) [a] member or citizen of an Indian tribe" or "(B) [e]ligible for membership or citizenship in an Indian tribe and is a biological child of a member or citizen of an Indian tribe." (§ 224.1, subd. (b)(1)(A)–(B).)

9

To effectuate timely determinations under ICWA and the California Indian Child Welfare Act (Cal-ICWA)—ICWA's state analogue—courts and child welfare agencies are charged with an "affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a).) This duty of inquiry by the social services agency begins when it is first contacted regarding a child and includes an obligation to ask "each family member, including extended family members" whether the child is or may be an Indian child. (*Id*., subd. (b)(1).) A similar duty of initial inquiry exists for the court presiding over a juvenile proceeding that could result in placement of a child with someone other than a parent. (*Id*., subd. (c).)

The quality of information obtained by the initial inquiry dictates the subsequent obligations imposed by Cal-ICWA, if any, on the juvenile court and the social services agency. Where the inquiry produces a "reason to know" a child is an Indian child, the party seeking foster care placement with someone other than a parent or Indian custodian must provide formal notices to the tribe concerning court proceedings. (§§ 224.2, subds. (d), (f), 224.3.)

If, on the other hand, the initial inquiry does not provide a reason to know, but instead presents a "reason to believe" the child is an Indian child, then the court and the social services agency are responsible for promptly pursuing further inquiry regarding the possible Indian status of the child. (§ 224.2, subd. (e).) Further inquiry includes but is not limited to interviewing the "parents, Indian custodian, and extended family members" to gather information required under section 224.3, subdivision (a) for purposes of providing a tribe with the names, addresses and birth dates of the child's biological parents, grandparents, and great-grandparents; contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the names and contact information of

10

tribes in which the child may be a member or citizen; and "[c]ontacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (*Id.*, subd. (e)(2)(C).) The juvenile court "has a responsibility to ascertain that the agency has conducted an adequate investigation." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709.)

There is *reason to know* a child is an Indian child if: (1) a person with an interest in the child, such as an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family, informs the court the child is an Indian child; (2) the residence or domicile of the child, child's parents, or Indian custodian is on a reservation or in an Alaska Native village; (3) a participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court it has discovered information indicating the child is an Indian child; (4) the child gives the court reason to know the child is an Indian child; (5) the court is informed the child is or has been a ward of a tribal court; and (6) the court is informed that either the parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).) There is *reason to believe* a child is an Indian child if there is information suggesting that either the parent or child is a member or citizen, or may be eligible for membership or citizenship, in an Indian tribe. (*Id.* at subd. (e)(1).) Information suggesting membership or citizenship, or potential membership or citizenship in a tribe, includes information that indicates the existence of one or more of the reasons to know enumerated above. (*Ibid.*)

When a juvenile court finds that ICWA does not apply to a child, " ' "[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social

11

workers had fulfilled their duty of inquiry." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 (*Josiah T.*).) We review a juvenile court's ICWA findings for substantial evidence, which requires us to determine if " ' "reasonable, credible evidence of solid value supports the court's order." ' " (*Ibid.*; see also *In re S.H.* (2022) 82 Cal.App.5th 166, 175.)

### B.     *Adequacy of the Agency's Inquiry*

Father argues that the Agency failed to adequately inquire as to Minor's Native American heritage when it failed to document any inquiry of the paternal aunt and uncle, did not acknowledge in its reports that Father had completed an ICWA-020 form indicating he might be eligible for membership in a federally recognized tribe, and made no effort to contact tribes regarding Minor's possible Native American ancestry. We disagree.

The record indicates the Agency went to great lengths to inquire as to whether either of Minor's parents had Native American ancestry. With respect to Mother, the Agency continued to seek out ICWA-related information, notwithstanding the fact Mother filed an ICWA-020 form initially indicating she did *not* have Native American ancestry. The Agency spoke with Mother multiple times to try and discern the basis of her claims of Native American ancestry, asked Mother to ask maternal grandmother about the issue, unsuccessfully attempted on multiple occasions to speak with maternal grandmother, and spoke with a maternal grand-aunt who denied any knowledge of Native American ancestry in the family. After all of these conversations, Mother could say no more than that she believed she was Native American because "she ha[d] read several history books." Further, despite representing that she might have relatives from a tribe or reservation somewhere north of California, she could not explain the basis for her belief. Mother also did not provide any contact information for " 'Aunt Pearl' " or a

12

" 'Nance Farin Jones,' " who Mother stated might have more information.

As for Father, beginning in February 2023, the Agency attempted to speak with him multiple times and, when it was finally able to reach him, he refused to respond to the ICWA inquiries. From the end of February 2023 to the beginning of March 2023, Father failed to respond to the Agency's texts and phone calls, and continued to decline to respond. In April 2023, Father began responding to the Agency and indicated he did not know if he had Native American ancestry, but had never used services for Native Americans, resided on a reservation, or attended cultural events on a reservation. However, the Agency noted that Father continued to be "very difficult to engage throughout the investigation," would decline to respond to questions, or would become upset with or speak over the social worker.

It is true that at some point in the investigation, Father mentioned having a brother who was in foster care with him and Minor's Brother mentioned Father's sister who also lived in the Bay Area. However, neither Father nor Minor's Brother provided any names or contact information of these individuals, and in July 2023, Father specifically indicated that he had no relatives he or the Agency would be able to contact to discuss the ICWA issue. In later conversations with Father, he also stated that he did not have Native American ancestry. Minor's Brother also reported on two occasions that he was unaware of any Native American ancestry.

The foregoing constitutes substantial evidence in support of the juvenile court's finding that the Agency fulfilled its duty of inquiry. (See *Josiah T.*, *supra*, 71 Cal.App.5th at p. 401.) Notwithstanding both parents' vague and inconsistent representations as to whether they had Native American ancestry, the Agency repeatedly attempted to obtain contact information of relatives who could potentially provide more information

13

regarding the ICWA issue and repeatedly attempted to contact and speak with relatives for whom the Agency did have contact information, including Minor's Brother and a maternal grand-aunt. Each of their attempts, however, came up empty.

Further, neither Mother nor Father provided the Agency with the contact information necessary to further advance the ICWA inquiry. Under these circumstances, the Agency was not required to inquire any further. (See, e.g., *In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082 [where parent largely fails to cooperate with agency or to provide names and contact information for extended family members, agency's ability to conduct exhaustive ICWA inquiry is necessarily constrained]; *In re K.M.* (2009) 172 Cal.App.4th 115, 119 [agency "did all that can or should be reasonably expected of it to meet its obligation" when record indicated it "attempted on several occasions to elicit further information from the child's family, but was unsuccessful due to the family's hostility"].) Though it is true the Agency has a duty to develop information bearing on whether a child is a Native American child, "in most cases the court and [agency] cannot satisfy this duty without the participation of the parents." (*Q.M.*, at p. 1082.) Thus, though it is reasonable in many cases to follow up on leads provided by the parents, "we cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Ibid.*)

As for Father's other arguments regarding the purported inadequacy of the Agency's ICWA inquiry, they also have no merit. Father takes issue with the Agency's failure to acknowledge in its reports that Father had completed an ICWA-020 form indicating he might be eligible for membership in a federally recognized tribe. However, this fact has nothing to do with the

adequacy of the Agency's ICWA inquiry. Further, as stated, the record clearly indicates that even if the Agency did not acknowledge Father's filing of this form, it did continue to pursue the ICWA inquiry despite Father reporting on at least three occasions subsequent to completing the ICWA-020 form that he did not have Native American ancestry.

As for Father's contention the Agency made no effort to contact tribes regarding Minor's possible Native American ancestry based on Mother's belief she might have relatives located in a tribe north of California, he does not further elaborate. As such, we deem this contention waived. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].) In any event, the Agency's duty to provide formal notices was not triggered by Mother's unsubstantiated and vague references to potential membership in a tribe or reservation somewhere north of California as they did not provide reason to know Minor was an Indian child. (See §§ 224.2, subds. (d), (f), 224.3.)

### III. DISPOSITION

The order terminating parental rights is affirmed, and no remand for ICWA and Cal-ICWA compliance is necessary.

CLAY, J. *

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

*Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.